■ Neil Appelbaum et al., Appellants, v Sylvia Deutsch et al., Respondents. — Judgment, Supreme Court, New York County (Andrew Tyler, J.), entered on August 15, 1984, affirmed for the reasons stated by Andrew Tyler, J., without costs and without disbursements. Concur — Sandler, Asch and Bloom, JJ.

Kupferman, J. P., and Kassal, J., dissent in a memorandum by Kupferman, J. P., as follows: Plaintiffs are members of the East 50th Street block association. They commenced this CPLR article 78 proceeding to overturn a decision by the Department

of Buildings (DOB) which was sustained by the Board of Standards and Appeals (BSA). This decision permitted the alteration of a building owned by the Organization of African Unity (OAU) and located on the plaintiffs' block. The OAU wishes to use the building as a mission for their group, which possesses observer status at the United Nations. The East 50th Street area is residential in character, zoned R-8. The mission, which will not be the ambassador's residence, was authorized by the BSA as being a "community facility".

A "community facility" is found in Zoning Resolution of City of New York § 22-13 (Use Group 3). The description of a community facility is prefaced by three definitional statements. The first statement requires these facilities "to serve or to provide other essential services for the residents." This mission will not provide any services to the residents, let alone any essential services. It will only provide services for itself. It is not appropriate to locate this facility in a residential area in light of the substantial change it will work on this neighborhood. A diplomatic mission will bring with it the increased congestion, traffic and parking problems that seem to be endemic to missions throughout the city, not to mention any potential security problems. These would be devastating to a residential neighborhood such as this one.

The second part of the definition holds that a community facility is one which "can perform their activities more efficiently in a residential environment." Nothing has been demonstrated to show that this facility will perform more effectively in a residential neighborhood. The plans which have been filed show that the facility is being converted into an office-type structure. Offices do not perform more effectively in a residential area. An office by any other name is not a community facility, it is still an office.

As for the final component in this definition, the community facility is not supposed to "create significant objectionable influences in residential areas." While there is no objection to OAU qua OAU, there is objection by the residents to *a* mission. Judicial notice can be taken of the fact that diplomatic missions these days draw opposition ranging from picketing to bombing.

The respondents quote the Second Department's opinion in *East Bayside Homeowners Assn. v Board of Stds. & Appeals* (77 AD2d 858). That court stated: "Clearly, then, the three statements describing 'community facilities' do not constitute conditions precedent to the granting of a building permit." (77 AD2d, at p 859.) Instead, the court refers to these as basic characteristics of the use group. That court upheld the ruling of the BSA on

the ground that the building of a school was clearly a "community facility". The same rationale does not apply to the instant case. A school is a community facility, a diplomatic office or quasi-diplomatic office is not. A school is a permitted use, expressly authorized by the regulations, a mission is not. Moreover, the plain meaning of the words would indicate the conclusion.

Section 22-13 (A) speaks of "non-profit institutions with sleeping accommodations" still being considered "community facilities". However, inasmuch as this mission cannot be classified as a community facility in the first instance, the question of whether or not the mission may be considered a nonprofit facility is irrelevant.

The finding of the BSA that this diplomatic office building is a community facility is arbitrary and capricious. It is not supported by the pertinent regulations, nor is it supported by the normal rules of construction. (*Matter of Century Operating Corp. v Popolizio,* 60 NY2d 483.) Accordingly, I would reverse the decision of the Board of Standards and Appeals and deny the building permit.