[977 NYS2d 292]

Viviane Etienne Medical Care, P.C., as Assignee of Alem Cardenas, Appellant, v Country-Wide Ins. Co., Respondent.

Second Department, December 18, 2013

34

APPEARANCES OF COUNSEL

*Tsirelman & Valerio, P.C.*, Long Island City (*Max Valerio* of counsel), for appellant.

*Jaffe & Koumourdas, LLP*, New York City (*Jean H. Kang* of counsel), for respondent.

## OPINION OF THE COURT

RIVERA, J.P.

In this action by the plaintiff, a medical service provider, to recover first-party no-fault insurance benefits, this Court must address the issue of the plaintiff's burden of proof on a motion for summary judgment in such an action. Specifically, we consider whether, as an element of its prima facie burden, the plaintiff is required to establish the merits of its claim for payment. We conclude that, where, as here, a defendant insurer does not timely and properly deny a claim, the plaintiff is not required to make such a showing. We reaffirm the long-standing precedent that, in this context, the plaintiff makes a prima facie showing of entitlement to judgment as a matter of law by submitting evidence, in admissible form, that the prescribed statutory billing forms were mailed to and received by the defendant insurer, which failed to either pay or deny the claim within the prescribed 30-day period.

## I. Factual and Procedural History

On June 20, 2004, Alem Cardenas allegedly sustained personal injuries as a result of an automobile accident. According to the plaintiff, on that date, there was an existing automobile liability insurance policy containing a New York

State no-fault endorsement issued by the defendant. The plaintiff allegedly furnished medical services to Cardenas for injuries relating to the subject automobile accident. Cardenas assigned his right to receive no-fault benefits to the plaintiff.

By summons and verified complaint dated September 23, 2005, the plaintiff, as assignee of Cardenas, commenced the instant action to recover no-fault insurance benefits. The plaintiff asserts that (1) it timely submitted bills and claim forms to the defendant for the services it provided to Cardenas, together with proper verification, (2) the defendant did not timely deny or request additional verification, and (3) the claims remained unpaid and outstanding.

In its verified answer, dated March 6, 2006, the defendant asserted 28 affirmative defenses, including that the plaintiff failed to file bills in a timely fashion as prescribed by the New York State Comprehensive Motor Vehicle Insurance Reparations Act (Insurance Law art 51), the medical treatment provided was neither necessary nor "medically indicated," and payment of the plaintiff's claims was not overdue because of the plaintiff's failure to submit to the defendant "proper proof of the fact and amount of the loss" as required by the Insurance Law.

A. The Plaintiff's Motion for Summary Judgment

By notice of motion dated September 2, 2008, the plaintiff moved, inter alia, for summary judgment on the complaint. In support thereof, the plaintiff attached a copy of the pleadings and a copy of an assignment of benefits form (NF-AOB), pursuant to which Cardenas assigned his no-fault benefits to the plaintiff. The plaintiff also attached eight NF-3 verification forms, used to establish proof of claim (see 11 NYCRR 65-1.1), to document the services allegedly provided by the plaintiff to Cardenas from June 22, 2004, through October 25, 2004, as well as the corresponding amounts for those services. Each NF-3 form has a stamped signature bearing "V Etienne M.D." The plaintiff further attached seven mailing ledgers stamped by the United States Postal Service.

Additionally, the plaintiff submitted one NF-10 denial of claim form dated November 22, 2004, in which the defendant denied payment of one claim dated November 17, 2004, in the amount of $139. The reason proffered for the denial of that claim was: "Based on the results from the independent medical exam the claimant attended on 9/21/04, which were negative and stated that maximum medical improvement has been achieved, all no-fault benefits are denied as of 9/28/04."

In further support of its motion, the plaintiff proffered the affidavit of Roman Matatov, who described how the NF-3 verification forms were generated and set forth the procedures for mailing them to the insurer. Matatov stated in his affidavit that he is the president of SUM Billing Corp. (hereinafter SUM Billing), a company that provides services such as verifying insurance coverage, billing, collecting overdue payments, providing information to insurers upon request, and assembling and preparing files for litigation. Matatov further stated: "I supervise the billing and collection relating to No-Fault bills, and *I personally carry out mailing of the bills we create*" (emphasis added).

Matatov averred that SUM Billing enters into a "business arrangement" with its clients prior to providing services, pursuant to which the clients "are under a business duty to provide [SUM Billing] with the documentation necessary to create a bill, such as initial or intake reports, progress notes, test results and medical reports." Matatov stated:

> "These documents are created near the time in which the events therein described occurred; they are created in the course of the providers' business; and it is the providers' business to create these documents as evidence of the services they have rendered. I personally obtain these documents by visiting the providers we serve. The documents are then incorporated into my company's records, and we rely upon them and the information therein contained in the performance of our business."

Matatov next described the methods utilized by SUM Billing to create a bill. He explained that SUM Billing would input information provided by its clients into custom-designed software. The software creates NF-3 forms by automatically filling in the statutorily required information.

Matatov then set forth his company's procedure for mailing the NF-3 form to the insurer, as follows:

> "The mailing information of the insurer from which we seek reimbursement on behalf of our clients is automatically inserted on an NF-3 based on the insurer's name; the billing software also prints this information on the envelope. NF-3s are then printed and inserted into this envelope together with any other necessary document required by insurers or by the circumstances.

"All envelopes ready for mailing are placed in a box, which I personally take to the US Post Office at least once a week or whenever otherwise necessary to respect the statutory deadlines. *I retain sole responsibility for the mailing of the documents created by my corporation, and I personally inspect and verify the accuracy and completeness of every envelope set to leave the office*" (emphasis added).

Consistent with the procedures he outlined above, Matatov indicated that he mailed the aforementioned eight NF-3 bills to the defendant.

In further support of its motion, the plaintiff submitted the affirmation of its counsel, Gary Tsirelman, dated September 2, 2008. Tsirelman asserted in his affirmation that the plaintiff established, prima facie, its entitlement to judgment as a matter of law through the submission of the NF-3 forms, which included the fact and amounts of loss sustained, and by setting forth that the payment of the benefits were overdue. Tsirelman contended that the burden then shifted to the defendant. Tsirelman argued that the defendant would be precluded from raising any "non-coverage" defenses, since it could not show that it timely denied the claims pursuant to the no-fault regulatory scheme.

B. The Defendant's Opposition

In opposition to the plaintiff's motion, the defendant submitted the affirmation of its counsel, Jean Kang, dated January 6, 2009, in which Kang countered that the plaintiff had not established a prima facie case since "all of the plaintiff's exhibits are hearsay" and, in order for them to be in admissible form, they had to fall under one of the exceptions to the hearsay rule. Kang contended that Matatov's affidavit was insufficient to lay a foundation for the admission of the NF-3 forms under the business records exception to the hearsay rule. Kang asserted that "each participant in the chain producing the record, from the initial declarant to the final entrant, must be acting within the course of regular business conduct or the declaration must meet the test of some other hearsay exception."

Kang claimed that it was not possible to determine from Matatov's affidavit whether he had any familiarity with the plaintiff and its practices and procedures. Further, Kang argued that Matatov's affidavit failed to provide any specific information regarding the individual responsible for mailing the specific bills at issue to the defendant. Rather, according to Kang, Matatov's affidavit was "obviously a template, and fails to provide

any specific information at all about the handling of the bill(s) in question, merely providing generalized details about [the] plaintiff's office practices." Kang concluded that there can be no presumption of mailing by merely making a list of claimants and dates that the claims were purportedly mailed.

## C. The Orders of the Civil Court and the Appellate Term

By order entered March 6, 2009, the Civil Court, Kings County, denied that branch of the plaintiff's motion which was for summary judgment on the complaint "for failure to establish a prima facie case."

By notice of appeal dated April 3, 2009, the plaintiff appealed to the Appellate Term of the Supreme Court for the Second, Eleventh, and Thirteenth Judicial Districts. By order dated February 1, 2011, the Appellate Term affirmed the Civil Court order (*see Viviane Etienne Med. Care, P.C. v Country-Wide Ins. Co.*, 31 Misc 3d 21 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2011]). The Appellate Term relied upon this Court's decisions and orders in *Art of Healing Medicine, P.C. v Travelers Home & Mar. Ins. Co.* (55 AD3d 644 [2008]) and *Matter of Carothers v GEICO Indem. Co.* (79 AD3d 864 [2010]), stating,

> "[i]n order for the claim forms to constitute prima facie proof of the fact and the amount of the loss sustained, the affidavit submitted by the plaintiff in support of its motion for summary judgment must lay a sufficient foundation to establish that the claim forms annexed thereto are admissible under the business records exception to the hearsay rule, which allows a document to be used as proof of the 'act, transaction, occurrence or event' recorded in the document" (*Viviane Etienne Med. Care, P.C. v Country-Wide Ins. Co.*, 31 Misc 3d at 22, quoting CPLR 4518 [a]).

The Appellate Term found that, here, Matatov's affidavit failed to demonstrate that he had personal knowledge of the plaintiff's practices and procedures and that he was competent to testify about those practices and procedures (*Viviane Etienne Med. Care, P.C. v Country-Wide Ins. Co.*, 31 Misc 3d at 24).

By decision and order on motion dated July 6, 2011, this Court granted the plaintiff's motion for leave to appeal from the order of the Appellate Term (2011 NY Slip Op 77673[U] [2011]).

## II. Overview of No-Fault's Statutory and Regulatory Scheme

In 1973, the New York State Legislature enacted the Comprehensive Motor Vehicle Insurance Reparations Act, commonly

referred to as the "No-Fault Law" (*see* Insurance Law art 51). "The primary aims of this new system were to ensure prompt compensation for losses incurred by accident victims without regard to fault or negligence, to reduce the burden on the courts and to provide substantial premium savings to New York motorists" (*Matter of Medical Socy. of State of N.Y. v Serio*, 100 NY2d 854, 860 [2003], citing Governor's Mem approving L 1973, ch 13, 1973 McKinney's Session Laws of NY at 2335). "In furtherance of these objectives, 'the Superintendent of Insurance . . . adopted regulations implementing the No-Fault Law (Insurance Law art 51), including *circumscribed time frames for claim procedures*' " (*New York & Presbyt. Hosp. v Country-Wide Ins. Co.*, 17 NY3d 586, 589 [2011], quoting *Hospital for Joint Diseases v Travelers Prop. Cas. Ins. Co.*, 9 NY3d 312, 317 [2007]).

The statutes and regulations pertaining to no-fault have been characterized by the Court of Appeals as a " 'thicket' " and " 'Rube-Goldberg-like maze' " (*Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co.*, 90 NY2d 274, 286 [1997, Wesley, J., dissenting]). The "basic no-fault regime" is summarized as follows:

> " 'The[ ] regulations require an accident victim to submit a notice of claim to the insurer as soon as practicable and no later than 30 days after an accident (*see* 11 NYCRR 65-1.1, 65-2.4 [b]). Next, the injured party or the assignee . . . must submit proof of claim for medical treatment no later than 45 days after services are rendered (*see* 11 NYCRR 65-1.1, 65-2.4 [c]). Upon receipt of one or more of the prescribed verification forms used to establish proof of claim, . . . an insurer has 15 business days within which to request "any additional verification required by the insurer to establish proof of claim" (11 NYCRR 65-3.5 [b]). An insurer may also request "the original assignment or authorization to pay benefits form to establish proof of claim" within this time frame (11 NYCRR 65-3.11 [c]). Significantly, an insurance company must pay or deny the claim within 30 calendar days after receipt of the proof of claim (*see* Insurance Law § 5106 [a]; 11 NYCRR 65-3.8 [c]). If an insurer seeks additional verification, however, the 30-day window is tolled until it receives the relevant information requested

(*see* 11 NYCRR 65-3.8 [a] [1])' '' (*Fair Price Med. Supply Corp. v Travelers Indem. Co.*, 10 NY3d 556, 562-563 [2008], quoting *Hospital for Joint Diseases v Travelers Prop. Cas. Ins. Co.*, 9 NY3d at 317; *see* Insurance Law § 5106 [a]; *Sound Shore Med. Ctr. v New York Cent. Mut. Fire Ins. Co.*, 106 AD3d 157, 162-163 [2013]).

"A proper denial of [a] claim [for no-fault benefits] must include the information called for in the prescribed denial of claim form (*see* 11 NYCRR 65-3.4 [c] [11]) and must promptly apprise the claimant with a high degree of specificity of the ground or grounds on which the disclaimer is predicated" (*St. Vincent's Hosp. & Med. Ctr. v New Jersey Mfrs. Ins. Co.*, 82 AD3d 871, 872 [2011] [internal quotation marks omitted]).

An insurer that fails to pay or deny a claim within the 30 days following its receipt of the proof of claim is subject to "substantial consequences" (*Fair Price Med. Supply Corp. v Travelers Indem. Co.*, 10 NY3d at 563 [internal quotation marks omitted]). That insurer "is generally precluded from asserting a defense against payment of the claim" (*id.* [internal quotation marks omitted]). The only exception that the Court of Appeals has carved out is where an insurer raises a defense of lack of coverage (*see id.*; *Hospital for Joint Diseases v Travelers Prop. Cas. Ins. Co.*, 9 NY3d at 318; *Central Gen. Hosp. v Chubb Group of Ins. Cos.*, 90 NY2d 195, 199 [1997]; *Sound Shore Med. Ctr. v New York Cent. Mut. Fire Ins. Co.*, 106 AD3d at 162-163). Indeed, the Court of Appeals has concluded that even a claim of fraud must be contested by an insurer within the tight deadlines of the no-fault regime, or else the insurer is precluded from asserting such a claim (*see Fair Price Med. Supply Corp. v Travelers Indem. Co.*, 10 NY3d at 565). While the Court of Appeals has recognized that preclusion may require an insurer to pay a no-fault claim it might not have had to honor if it had timely denied the claim, it has emphasized that the provision of "prompt uncontested, first-party insurance benefits" is "part of the price paid to eliminate common-law contested lawsuits" (*Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co.*, 90 NY2d at 285; *see Fair Price Med. Supply Corp. v Travelers Indem. Co.*, 10 NY3d at 565-566).

It follows that an insurer must also raise an objection regarding the bona fides of the plaintiff's claim forms within the time

schedules contained in the regulations. To conclude otherwise would permit an insurer to disregard the time windows set forth in the regulations and would countenance a belated evidentiary objection. By so doing, an insurer would be permitted to frustrate core objectives of the no-fault regime, which are " 'to provide a tightly timed process of claim, disputation and payment' " (*Hospital for Joint Diseases v Travelers Prop. Cas. Ins. Co.*, 9 NY3d at 319, quoting *Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co.*, 90 NY2d at 281), to reduce the burden on the courts, and to avoid protracted and costly litigation.

### III. The Plaintiff's Prima Facie Burden and This Court's Decision in *Art of Healing Medicine, P.C. v Travelers Home & Mar. Ins. Co.* (55 AD3d 644 [2008])

A plaintiff's prima facie showing of entitlement to judgment as a matter of law is defined, controlled, and circumscribed by the nature of the claim asserted, the elements of the cause of action pleaded, and the facts to be proven. This Court has consistently held that

> "[i]n an action to recover no-fault benefits, a plaintiff makes a prima facie showing of entitlement to judgment as a matter of law by submitting evidentiary proof that the prescribed statutory billing forms were mailed to and received by the relevant insurance carrier, and that payment of no-fault benefits was overdue" (*Westchester Med. Ctr. v Progressive Cas. Ins. Co.*, 89 AD3d 1081, 1082 [2011]; *see Westchester Med. Ctr. v GMAC Ins. Co. Online, Inc.*, 80 AD3d 603, 604 [2011]; *New York & Presbyt. Hosp. v Countrywide Ins. Co.*, 44 AD3d 729, 730 [2007]; *New York & Presbyt. Hosp. v Allstate Ins. Co.*, 29 AD3d 547, 547 [2006]).

Our sister appellate courts have likewise articulated the same standard (*see e.g. Sunshine Imaging Assn./WNY MRI v Government Empls. Ins. Co.*, 66 AD3d 1419, 1420 [2009]; *Countrywide Ins. Co. v 563 Grand Med., P.C.*, 50 AD3d 313, 314 [2008]; *LMK Psychological Servs., P.C. v Liberty Mut. Ins. Co.*, 30 AD3d 727, 728 [2006]).

In 2008, however, this Court held in *Art of Healing Medicine, P.C. v Travelers Home & Mar. Ins. Co.* (55 AD3d at 644) that "[t]he plaintiffs failed to establish their prima facie entitlement to judgment as a matter of law." In *Art of Healing*, this Court, in effect, added a requirement to the plaintiff's prima facie

burden, stating, without explanation, that "[t]he plaintiffs[ ] medical service providers failed to demonstrate the admissibility of their billing records under the business records exception to the hearsay rule" (id.).

*Art of Healing* has been cited by this Court on only one occasion (see *Matter of Carothers v GEICO Indem. Co.*, 79 AD3d 864 [2010]), and we are not aware of any other decision of this Court, in the context of no-fault insurance benefits litigation, requiring a plaintiff medical provider to lay a foundation for the admission of their claim forms under the business records exception to the hearsay rule in order to establish a prima facie case. As stated above, this Court has consistently held that a plaintiff medical service provider makes a prima facie showing of entitlement to judgment as a matter of law by submitting evidentiary proof that the prescribed statutory billing forms were mailed to and received by the relevant insurance carrier, and that payment of no-fault benefits was overdue (see *Westchester Med. Ctr. v Progressive Cas. Ins. Co.*, 89 AD3d at 1082; *Westchester Med. Ctr. v GMAC Ins. Co. Online, Inc.*, 80 AD3d at 604; *New York & Presbyt. Hosp. v Countrywide Ins. Co.*, 44 AD3d at 730; *New York & Presbyt. Hosp. v Allstate Ins. Co.*, 29 AD3d at 547).

The Appellate Term has cited to *Art of Healing* on at least 99 occasions. In several of those cases, the Appellate Term found that the plaintiff failed to establish its prima facie burden where it relied upon the affidavit of a biller who did not possess personal knowledge of the plaintiff's business practices and procedures so as to establish that the claim forms annexed to the plaintiff's moving papers were admissible under the business records exception to the hearsay rule (see e.g. *Raz Acupuncture, P.C. v GEICO Gen. Ins. Co.*, 33 Misc 3d 137[A], 2011 NY Slip Op 52064[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2011]; *D & R Med. Supply, Inc. v Safeco Ins. Co.*, 28 Misc 3d 127[A], 2010 NY Slip Op 51179[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2010]; *DJS Med. Supplies, Inc. v Travelers Prop. Cas. Ins. Co.*, 23 Misc 3d 128[A], 2009 NY Slip Op 50584[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2009]; *Great Wall Acupuncture, P.C. v New York Cent. Mut. Fire Ins. Co.*, 22 Misc 3d 136[A], 2009 NY Slip Op 50294[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2009]). Apparently, the Appellate Term has interpreted *Art of Healing* to require a plaintiff medical provider, as part of its prima facie burden, to establish that the claim forms annexed to the summary judgment motion are admissible as proof of the acts,

transactions, occurrences, or events recorded therein pursuant to CPLR 4518 (a). Thus, in essence, they have required proof of the merits of the claim, in addition to proof of the billing.

The *Art of Healing* Anomaly

██ We now conclude that this Court's holding in *Art of Healing* constitutes an anomaly, a jurisprudential drift from this Court's well-established precedent. Otherwise simple and straightforward procedural and substantive principles relating to a plaintiff medical service provider's prima facie burden were conflated in *Art of Healing*. This created additional confusion in the already murky realm of no-fault insurance benefits.

In order to unravel the disarray engendered by *Art of Healing*, a basic analytical template is required. "Proof," a word often misunderstood and misapplied, is defined as "[t]he establishment or refutation of an alleged fact by evidence" (Black's Law Dictionary 1334 [9th ed 2009]). As stated more than a century ago, "[e]vidence is the medium of proof; proof is the effect of evidence" (*People v Beckwith*, 108 NY 67, 73 [1888]). We must identify and clarify, first, "what" the plaintiff medical provider must prove in order to meet its prima facie burden in a no-fault insurance case and, second, "how" the plaintiff meets that burden. In the context of no-fault insurance, "what" must be shown is proof of billing, namely, that the billing forms were mailed to and received by the defendant insurer, and that the insurer failed to either pay or deny the claim within the requisite 30-day period (*see* Insurance Law § 5106 [a]; 11 NYCRR 65-3.8 [a] [1]; *Westchester Med. Ctr. v Hereford Ins. Co.*, 95 AD3d 1306 [2012]; *NYU-Hosp. for Joint Diseases v American Intl. Group, Inc.*, 89 AD3d 702, 703 [2011]; *Mount Sinai Hosp. v Country Wide Ins. Co.*, 85 AD3d 1136, 1137 [2011]). The requirement in Insurance Law § 5106 (a) that a claimant must submit "proof of the fact and amount of loss sustained" in order to trigger the 30-day period in which to pay or deny a claim refers to the contents of the billing forms, not the merits of the claim. To interpret these words to mean that a claimant must prove the merits of its claim prior to triggering the 30-day period after which the first-party benefits become overdue would defeat the purpose of the 30-day requirement, since a defendant insurer could always delay the onset of the 30-day period by arguing that the forms submitted were inadequate. Such an interpretation would allow a defendant insurer to circumvent the requirement of proffering a denial or requesting additional verification within 30 days simply by arguing

that the forms submitted did not establish the merits of the claim. The "how" evidentiary component of the plaintiff's proof is met by, inter alia, the affidavit of a billing agent or an employee of the medical provider; that is, someone with personal knowledge of the plaintiff's billing methods (*see e.g. NYU Hosp. for Joint Diseases v Country Wide Ins. Co.*, 84 AD3d 1043 [2011]; *New York Hosp. Med. Ctr. of Queens v Country Wide Ins. Co.*, 82 AD3d 723 [2011]; *Westchester Med. Ctr. v Progressive Cas. Ins. Co.*, 51 AD3d 1014, 1017 [2008]; *Westchester Med. Ctr. v Safeco Ins. Co. of Am.*, 40 AD3d 984 [2007]). The billing agent will (1) attest that he/she personally sent the billing forms to the insurer, that the insurer received the same, and that the insurer failed to pay or deny the claim within the requisite 30-day period, or (2) set forth the procedures customarily utilized in the ordinary course of its business regarding the mailing/receipt of such forms and that the insurer failed to pay or deny the claim within the requisite 30-day period. As part of its prima facie showing, the plaintiff is *not* required to show that the contents of the statutory no-fault forms themselves are accurate or that the medical services documented therein were actually rendered or necessary. Stated another way, the plaintiff is not required to establish the merits of the claim to meet its prima facie burden. To the extent that *Art of Healing* imposes a "business record" requirement obliging the plaintiff to establish the truth or the merits of the plaintiff's claim, we overrule *Art of Healing*.

█ In opposition to a plaintiff's prima facie showing, if no denial of claim was proffered, a defendant insurer may avail itself of evidentiary objections, such as the business record exception to the rule against hearsay pursuant to CPLR 4518, *only* to challenge the plaintiff's proof of billing relating to the mailing or receipt of the billing forms and the defendant's alleged failure to deny or pay the claim within the requisite time periods. Therefore, where the defendant insurer fails to proffer a timely denial of claim to the plaintiff's proof of billing, or request additional verification within the time frames set forth in the no-fault regulations (*see* Insurance Law § 5106 [a]; 11 NYCRR 65-3.5, 65-3.8 [c]), the insurer is precluded from raising an evidentiary challenge to the admissibility of the documents under the business records exception to the hearsay rule with regard to the contents of the billing forms. To countenance a different result would render the entire no-fault regulatory claim and payment process meaningless. The purpose of the No-Fault Law is to keep claims out of court, and to accomplish that

purpose, the regulations must be followed. The onus is upon the defendant insurer to either pay the medical provider's claim or timely deny the claim. An insurer's penalty for its failure to proffer a timely and proper denial of claim is that it will be precluded from objecting to a claim based upon a purported deficiency in the claim. Thus, an insurer's challenges and objections to the medical provider's prescribed statutory billing forms must be made within the circumscribed time frames for claim procedures. Challenges and objections regarding whether the services were, in fact, rendered, were causally related to a covered accident, or were medically necessary are not available to the defendant insurer after the onset of litigation unless the insurer proffered a timely and proper denial of claim within the prescribed time frame.

### IV. Application of the Law to the Instant Case

■ Based on the foregoing, with the exception of the plaintiff's claim dated November 17, 2004, in the amount of $139, the plaintiff established, prima facie, its entitlement to judgment as a matter of law by demonstrating that its prescribed statutory billing forms used to establish proof of claim (*see* 11 NYCRR 65-1.1) were mailed to and received by the defendant and that the defendant failed to either timely pay or deny the claims (*see* Insurance Law § 5106; 11 NYCRR 65-3.8 [a] [1]; *Westchester Med. Ctr. v Progressive Cas. Ins. Co.*, 89 AD3d at 1082; *Westchester Med. Ctr. v GMAC Ins. Co. Online, Inc.*, 80 AD3d at 604). However, with regard to the plaintiff's claim dated November 17, 2004, in the amount of $139, we note that the plaintiff's summary judgment motion papers included the defendant's denial of that claim dated November 22, 2004. Contrary to the plaintiff's contention, that denial of claim was, in fact, timely and sufficient (*see Forrest Chen Acupuncture Servs., P.C. v GEICO Ins. Co.*, 54 AD3d 996, 996-997 [2008]; *Westchester Med. Ctr. v Allstate Ins. Co.*, 45 AD3d 579, 580 [2007]). Therefore, as to that particular claim, the plaintiff did not meet its prima facie burden, and we need not consider the defendant's opposition to that branch of the plaintiff's motion (*see Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]).

The defendant's contention that the plaintiff failed to establish that the bills were, in fact, mailed and received is without merit. "Generally, 'proof that an item was properly mailed gives rise to a rebuttable presumption that the item was received by the addressee' " (*New York & Presbyt. Hosp. v Allstate Ins. Co.*,

29 AD3d at 547, quoting *Matter of Rodriguez v Wing*, 251 AD2d 335, 336 [1998]). " 'The presumption may be created by either proof of actual mailing or proof of a standard office practice or procedure designed to ensure that items are properly addressed and mailed' " (*New York & Presbyt. Hosp. v Allstate Ins. Co.*, 29 AD3d at 547, quoting *Residential Holding Corp. v Scottsdale Ins. Co.*, 286 AD2d 679, 680 [2001]). Such "office practice must be geared so as to ensure the likelihood that [the correspondence] is always properly addressed and mailed" (*Nassau Ins. Co. v Murray*, 46 NY2d 828, 830 [1978]; *see Matter of Eveready Ins. Co. v France*, 66 AD3d 776, 776 [2009]).

Here, the plaintiff's submissions gave rise to a presumption that the prescribed verification forms were received by the defendant. In his affidavit, Matatov stated that the billing forms were mailed to the defendant, that he possessed personal knowledge of the office practice and procedure used by his company to ensure that items were properly addressed and mailed, and that he personally carried out the mailing of the bills his company creates. The signed and date-stamped U.S. Postal Service mailing ledger, which Matatov stated was kept in the regular course of business, also indicated the date on which each bill was mailed.

In opposition to those claims where the plaintiff did satisfy its prima facie burden, the defendant failed to raise a triable issue of fact. The defendant failed to timely contest the adequacy of those claim forms during the prescribed no-fault regulatory time periods (*see* 11 NYCRR 65-3.5). The defendant's failure to timely request additional verification to establish proof of claim, object to the adequacy of the claim forms, or otherwise deny the claim precludes it from raising the instant defense; namely, that the plaintiff failed to demonstrate the admissibility of its claim forms under the business records exception to the rule against hearsay (*see Fair Price Med. Supply Corp. v Travelers Indem. Co.*, 10 NY3d at 563; *Hospital for Joint Diseases v Travelers Prop. Cas. Ins. Co.*, 9 NY3d at 318). Simply stated, the defendant must pay those claims.

To the extent that the dissent has articulated concerns with the instant opinion, I must emphasize the following points in order to crystallize the majority's holding. First, this Court is not overturning or abrogating the principle that a plaintiff seeking to recover first-party no-fault benefits must establish a prima facie case. Rather, we are applying the well-established precedent of this Court and the Court of Appeals relating to the

plaintiff's prima facie burden. There is no dispute that the plaintiff has a burden and must satisfy it by submitting evidence in admissible form. Second, my dissenting colleagues comment upon an alleged "rampant fraud besieging New York's no-fault system" (dissenting op at 50). This is matter dehors the record, and plays no part in the legal analysis and the issues presented on this appeal. Third, the dissent apparently disapproves of the long-standing precedent set forth in case law regarding a plaintiff's prima facie showing of entitlement to judgment as a matter of law in the context of no-fault when it states that those cases "reflect the standard under which a plaintiff may establish, prima facie, that it is entitled to the remedy of preclusion" (dissenting op at 58-59). However, in *Fair Price Med. Supply Corp. v Travelers Indem. Co.* (10 NY3d at 565), the Court of Appeals stated that preclusion required the insurer to pay a no-fault claim it might not have been obligated to honor if timely disclaimed. As a "tradeoff of the no-fault reform," insurers can "contest ill-founded, illegitimate and fraudulent claims, but within a strict, short-leashed contestable period" (*id.* at 565-566). Fourth, our goal herein is to correct the confusion that ensued and, in fact, continues to permeate this area of law as a result of *Art of Healing*. We departed from our precedent when we decided *Art of Healing* and, as a court of stare decisis, we must restore consistency in our cases. The plaintiff's prima facie burden is satisfied by "proof of billing." The defendant insurer's penalty of preclusion is self-inflicted by its failure to proffer a proper and timely denial of claim prior to the onset of litigation.

We do not address the issues raised which pertain to that branch of the plaintiff's motion which was for leave to amend the complaint, as that branch of the motion remains pending and undecided (*see Katz v Katz*, 68 AD2d 536, 542-543 [1979]).

Accordingly, the order dated February 1, 2011, is modified, on the law, by deleting the provision thereof affirming the order dated March 6, 2009, and substituting therefor a provision modifying the order dated March 6, 2009, by deleting the provision thereof denying that branch of the plaintiff's motion which was for summary judgment on the complaint, and substituting therefor a provision granting that branch of the motion, except as to the claim dated November 17, 2004, in the amount of $139; as so modified, the order dated February 1, 2011, is affirmed, and the matter is remitted to the Civil Court, Kings County, to calculate the amount owed to the plaintiff for no-

fault benefits, and to determine whether the plaintiff is entitled to statutory interest and attorney's fees (*see* Insurance Law § 5106 [a]; 11 NYCRR 65-4.6).

MILLER, J. (concurring in part and dissenting in part). There is nothing in the no-fault provisions of the Insurance Law, its implementing regulations, or the applicable case law that permits a party seeking no-fault benefits to recover reimbursement for economic loss without affirmatively establishing the merits of its claim pursuant to Insurance Law § 5102 (a) (1) and (b). Neither the Court of Appeals nor this Court has ever previously held that a plaintiff's prima facie burden is diminished or otherwise altered by an insurer's failure to comply with the relevant time periods set forth in the regulatory framework of the No-Fault Law. I fully recognize that an insurer's failure to comply with such time periods may preclude it from interposing a defense to a plaintiff's claim. However, this penalty, itself a creation of the courts, should not be expanded. The fact that an insurer may be precluded from challenging or objecting to the merits of a claim does not absolve a plaintiff from discharging its statutorily-imposed burden. The position advanced by the plaintiff and accepted by the majority constitutes an unwarranted extension of a judicially-created penalty that nullifies the burden imposed by Insurance Law § 5102 (a) (1) and (b), while serving to overturn the basic legal principle that a plaintiff must establish the merits of its case in the first instance, regardless of whether the defendant is permitted to controvert the plaintiff's position or otherwise present a case in defense.

I conclude that, in order to establish, prima facie, entitlement to a money judgment, a plaintiff seeking to recover first-party no-fault benefits must affirmatively demonstrate that it is entitled to reimbursement for necessary medical expenses arising from personal injuries sustained from the use or operation of a motor vehicle in the amount specified in the complaint (*see* Insurance Law § 5102 [a] [1]; [b]). This requirement is not onerous. Indeed, it would have been satisfied here if the plaintiff had simply submitted the proof of claim forms in admissible form.

Although my conclusion is based upon the statutes that comprise the No-Fault Law and basic principles regarding parties' respective burdens of proof, it is appropriate, given the far-reaching policy implications of the legal issues presented on this appeal, to take judicial notice of the fact that "[t]he impact of fraud on this State's no-fault system is notorious" (*Fair Price*

*Med. Supply Corp. v Travelers Indem. Co.*, 10 NY3d 556, 567 [2008, Smith, J., dissenting]; *see Consolidated Edison Co. of N.Y. v Public Serv. Commn. of State of N.Y.*, 47 NY2d 94, 110 [1979]; *Appelbaum v Deutsch*, 111 AD2d 21, 22 [1985], *affd* 66 NY2d 975 [1985]; *Dougherty v 425 Dev. Assoc.*, 93 AD2d 438, 447 [1983]; *see also* Prince, Richardson on Evidence §§ 2-202, 2-203 [Farrell 11th ed 2008]). Despite efforts to prosecute deceptive health care providers and medical mills, "[t]he number of suspected no-fault fraud reports received by the Department [of Financial Services] increased by 16 percent from 2011 to 2012" (Cover Letter from Benjamin M. Lawsky, Superintendent of the Department of Financial Services, dated March 15, 2013, 2012 Annual Report on the Activities of the Department to Investigate and Combat Health Insurance Fraud). In 2012, "[r]eports of no-fault fraud totaled 90 percent of health insurance fraud reports, up from 85 percent in 2011, and more than half of reports of fraud of all types, making no-fault fraud again the biggest single fraud issue [in 2012]" (*id.*).

I cannot help but recognize that jettisoning any requirement that a claimant establish the substantive merits of its claim will only serve to encourage and facilitate the rampant fraud besieging New York's no-fault system. Faced with this specter of ever-increasing fraud, it is all the more essential that the court system enforce the minimal evidentiary requirement that a plaintiff establish the merits of its claim before it recovers on it. Accordingly, I would affirm the order of the Appellate Term and must respectfully dissent in part.

The complaint alleged that an individual (hereinafter the insured) was involved in an automobile accident and that, at the time of the accident, he was insured by a no-fault automobile insurance policy issued by the defendant (hereinafter the insurer). The complaint alleged that the plaintiff, Viviane Etienne Medical Care, P.C., rendered health services to the insured in connection with personal injuries sustained in the accident.

The health services, variously described as "hot pack," "electrical stimulation," "therapeutic exercises," and "follow up," allegedly were conferred on a weekly basis over the course of about four months to treat, inter alia, "strain" to the injured individual's neck, back, and elbow. The complaint alleged that the insured was entitled to compensation for the cost of these services under the terms of the no-fault policy. The services were eventually discontinued after an independent medical exam failed to substantiate the claimed injuries or the medical necessity of the treatments.

The complaint alleged that the insured assigned his first-party benefits under the no-fault policy to the plaintiff and that the plaintiff submitted to the insurer bills and claims in the amount of $6,130.70, "together with proper verification." The complaint also alleged that the insurer did not timely deny the claim for benefits or otherwise seek additional verification. The complaint further asserted that, based on these allegations, the plaintiff, as the assignee of the insured, was entitled to recover the amount of the unpaid bills from the insurer under the no-fault policy. The complaint is not verified by a party or the insured. Rather, it is verified by an attorney.

In its verified answer, the insurer denied certain factual allegations asserted in the complaint. The verified answer additionally contained a number of separate affirmative defenses.

The plaintiff thereafter moved, inter alia, for summary judgment on the complaint. In support of its motion, the plaintiff submitted a series of forms, designated NYS Form NF-3, which are entitled "Verification of Treatment by Attending Physician" (hereinafter Attending Physician Verifications). These Attending Physician Verifications contained stamped facsimiles of a physician's signature. The plaintiff also provided an affidavit from the president of a third-party billing services company, who stated that the Attending Physician Verifications were not completed by an attending physician, but were filled out by the third-party billing services company. The president of the third-party billing services company represented that, after the unnamed employees of his company filled out the Attending Physician Verifications, they were personally mailed by him to the insurer on various dates over the course of the time period alleged in the complaint.

The insurer opposed the motion, arguing that the plaintiff failed to establish, prima facie, that it was entitled to judgment as a matter of law. The Civil Court, Kings County, agreed and denied that branch of the plaintiff's motion which was for summary judgment on the ground that the plaintiff failed to establish a prima facie case. The Appellate Term of the Supreme Court for the Second, Eleventh, and Thirteenth Judicial Districts affirmed the Civil Court's order. The Appellate Term concluded that the plaintiff failed to establish its prima facie case since the proof of claim forms it submitted constituted inadmissible hearsay and the applicability of the business record exception had not been demonstrated (see *Viviane Etienne Med. Care, P.C. v Country-Wide Ins. Co.*, 31 Misc 3d 21 [App

Term, 2d Dept, 2d, 11th & 13th Jud Dists 2011]). This Court subsequently granted leave to appeal. Since I agree with the Appellate Term that the plaintiff failed to establish its prima facie case, I would affirm the order appealed from.

Under New York's no-fault statute, the term " '[f]irst party benefits' means payments to reimburse a person for basic economic loss on account of personal injury arising out of the use or operation of a motor vehicle" (Insurance Law § 5102 [b]). " 'Basic economic loss' means, up to fifty thousand dollars per person" of certain enumerated items including "[a]ll necessary expenses incurred for . . . medical, hospital . . . and prosthetic services" as well as "physical therapy (provided that treatment is rendered pursuant to a referral) and occupational therapy and rehabilitation" (Insurance Law § 5102 [a] [1]).

Here, the plaintiff failed to establish, prima facie, its entitlement to judgment as a matter of law, since it failed to demonstrate that it is entitled to reimbursement for necessary medical expenses arising from personal injuries sustained from the use or operation of a motor vehicle (see Insurance Law § 5102 [a] [1]; [b]). The Attending Physician Verifications submitted by the plaintiff in support of its motion, intended to function as proof of the plaintiff's claim, constituted hearsay and were, without more, ineffective to affirmatively demonstrate that the plaintiff was entitled to recover payments of no-fault benefits (see Insurance Law §§ 5102 [a] [1]; 5106 [a]; see also Matter of Carothers v GEICO Indem. Co., 79 AD3d 864, 864-865 [2010]; Art of Healing Medicine, P.C. v Travelers Home & Mar. Ins. Co., 55 AD3d 644 [2008]; cf. Splawn v Lextaj Corp., 197 AD2d 479, 480 [1993]; Prince, Richardson on Evidence § 8-401 [Farrell 11th ed 2008]).

The plaintiff's submissions also were not sufficient to demonstrate the forms' admissibility as business records.

> "To be admissible as a business record, a document must have been made in the regular course of business, and it must have been the regular course of the business to make such a record, at the time of the act, transaction, occurrence, or event recorded, or within a reasonable time thereafter" (Lodato v Greyhawk N. Am., LLC, 39 AD3d 494, 495 [2007]; see CPLR 4518 [a]; People v Kennedy, 68 NY2d 569, 579-580 [1986]).

"In addition, each participant in the chain producing the rec-

ord, from the initial declarant to the final entrant, must be acting within the course of regular business conduct or the declaration must meet the test of some other hearsay exception" (*Matter of Leon RR*, 48 NY2d 117, 122 [1979]; *see* Prince, Richardson on Evidence § 8-305 [Farrell 11th ed 2008]). "Thus, not only must the entrant be under a business duty to record the event, but the informant must be under a contemporaneous business duty to report the occurrence to the entrant as well" (*Matter of Leon RR*, 48 NY2d at 122-123; *see* Prince, Richardson on Evidence § 8-307 [Farrell 11th ed 2008]). "[T]he statement is inadmissible hearsay if any of the participants in the chain is acting outside the scope of a business duty" (*Matter of Leon RR*, 48 NY2d at 123).

Here, the president of the third-party billing services company stated in his affidavit that the Attending Physician Verifications submitted by the plaintiff were created by his company's computer software program and that the information contained therein was based upon undisclosed and unidentified documents obtained by his company from the plaintiff. The president's affidavit failed to demonstrate that he had any personal knowledge of the plaintiff's record-keeping procedures and the affidavit was otherwise insufficient to lay a foundation for the admission of the Attending Physician Verifications under the business records exception to the rule against hearsay (*see People v Cratsley*, 86 NY2d 81, 90 [1995]; *Reiss v Roadhouse Rest.*, 70 AD3d 1021, 1024-1025 [2010]; *Lodato v Greyhawk N. Am., LLC*, 39 AD3d at 495; *see also Matter of Leon RR*, 48 NY2d at 122-123; *Education Resources Inst., Inc. v Piazza*, 17 AD3d 513, 515 [2005]; *People v Rosa*, 156 AD2d 733, 734 [1989]).

The plaintiff nevertheless contends that, in the context of a motion for summary judgment in an action to recover unpaid benefits under the no-fault provisions of the Insurance Law, it is not required to affirmatively set forth substantive proof of its claim in admissible form. The plaintiff argues that it need only show that the insurer had notice of the claim for economic loss since, under the regulatory framework and subsequent case law, an insurer who fails to timely respond to such notice may be precluded from contesting the merits of the plaintiff's claim or from otherwise interposing a defense.

The plaintiff's contention is without merit, since the defendant's ability to assert a defense does not alter the plaintiff's affirmative burden of proof in the first instance. Contrary to the plaintiff's contention, neither the Court of Appeals nor this

Court has ever previously held that a plaintiff that successfully demonstrates that an insurer should be precluded from interposing a defense is automatically entitled to a money judgment in the amount alleged in the complaint or that such a plaintiff is relieved from proving its prima facie case pursuant to Insurance Law § 5102 (a) (1) and (b).

"Payments of first party benefits and additional first party benefits shall be made as the loss is incurred" (Insurance Law § 5106 [a]). "Such benefits are overdue if not paid within thirty days after the claimant supplies proof of the fact and amount of loss sustained" (id.). "If proof is not supplied as to the entire claim, the amount which is supported by proof is overdue if not paid within thirty days after such proof is supplied" (id.).

These statutory provisions were embodied in regulations promulgated by the Superintendent of Insurance (now the Superintendent of the Department of Financial Services), which provide that an individual injured in a motor vehicle accident must, with limited exceptions, provide the relevant insurer with "written notice setting forth details sufficient to identify the eligible injured person, along with reasonably obtainable information regarding the time, place and circumstances of the accident . . . no . . . more than 30 days after the date of the accident" (11 NYCRR 65-1.1 [d]; *see New York & Presbyt. Hosp. v Country-Wide Ins. Co.*, 17 NY3d 586, 589-590 [2011]). In addition,

> "[i]n the case of a claim for health service expenses, the eligible injured person or that person's assignee . . . shall submit written proof of claim to the [relevant insurer], including full particulars of the nature and extent of the injuries and treatment received and contemplated, as soon as reasonably practicable but, in no event later than 45 days after the date services are rendered" (11 NYCRR 65-1.1 [d]; *see New York & Presbyt. Hosp. v Country-Wide Ins. Co.*, 17 NY3d at 589-590).

"Within 30 calendar days after proof of claim is received, the insurer shall either pay or deny the claim in whole or in part" (11 NYCRR 65-3.8 [c]). "No-Fault benefits are overdue if not paid within 30 calendar days after the insurer receives proof of claim, which shall include verification of all of the relevant information requested pursuant to section 65-3.5 of this Subpart" (11 NYCRR 65-3.8 [a] [1]; *see* Insurance Law § 5106 [a]; *Hospital for Joint Diseases v Travelers Prop. Cas. Ins. Co.*, 9 NY3d 312, 317 [2007]).

Here, the plaintiff rests its position on case law which states that "a carrier that fails to deny a claim within the 30-day period is generally precluded from asserting a defense against payment of the claim" (*Hospital for Joint Diseases v Travelers Prop. Cas. Ins. Co.*, 9 NY3d at 318; *see St. Clare's Hosp. v Allcity Ins. Co.*, 201 AD2d 718, 720 [1994]; *Bennett v State Farm Ins. Co.*, 147 AD2d 779, 781 [1989]). These cases have also indicated that "a carrier's failure to seek verification or object to the adequacy of claim forms pursuant to 11 NYCRR 65-3.5 precludes it from interposing any defenses based on such deficiencies" (*Hospital for Joint Diseases v Travelers Prop. Cas. Ins. Co.*, 9 NY3d at 318; *see Westchester Med. Ctr. v Safeco Ins. Co. of Am.*, 40 AD3d 984, 984 [2007]).

However, although the "failure to timely object to the adequacy of the claim forms" may "constitute[ ] a waiver of any defenses based thereon" (*Hospital for Joint Diseases v Travelers Prop. Cas. Ins. Co.*, 34 AD3d 532, 532 [2006]), the fact that an insurer may eventually be precluded from asserting a defense against the payment of a claim does not affect the plaintiff's burden of affirmatively establishing, prima facie, the merits of its case in the first instance (*see* Ops Gen Counsel NY Ins Dept No. 00-01-02 [Jan. 11, 2000]; *compare Fair Price Med. Supply Corp. v Travelers Indem. Co.*, 10 NY3d at 563; *Hospital for Joint Diseases v Travelers Prop. Cas. Ins. Co.*, 9 NY3d at 317).

The three cases decided by the Court of Appeals that have applied the preclusion remedy in the no-fault context have not articulated the requirements of a plaintiff's prima facie case (*see Fair Price Med. Supply Corp. v Travelers Indem. Co.*, 10 NY3d 556 [2008]; *Hospital for Joint Diseases v Travelers Prop. Cas. Ins. Co.*, 9 NY3d 312 [2007]; *Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co.*, 90 NY2d 274 [1997]). In the first case, the Court of Appeals first recognized the judicially-developed preclusion remedy with respect to a defense of intoxication (*see New York & Presbyt. Hosp. v Country-Wide Ins. Co.*, 17 NY3d 586 [2011]), determining that, although the Insurance Law did not expressly provide for a remedy of preclusion, "the preclusion analysis that we have employed in . . . other branch[es] of the Insurance Law should also be discretely applicable [to no-fault cases]" (*Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co.*, 90 NY2d at 283; *see St. Clare's Hosp. v Allcity Ins. Co.*, 201 AD2d at 720; *Bennett v State Farm Ins. Co.*, 147 AD2d at 781). The two most recent cases were focused on the applicability and scope of "lack of coverage" defenses which may be raised in op-

position to a prima facie case (*see Fair Price Med. Supply Corp. v Travelers Indem. Co.*, 10 NY3d at 563; *Hospital for Joint Diseases v Travelers Prop. Cas. Ins. Co.*, 9 NY3d at 317).

The only one of the three cases that discussed the plaintiff's prima facie burden confined its analysis to the plaintiff's initial burden of proving that the first-party benefits had been assigned to it—the only portion of the plaintiff's prima facie case that was contested (*see Hospital for Joint Diseases v Travelers Prop. Cas. Ins. Co.*, 9 NY3d at 320). Nothing in any of the three Court of Appeals cases applying the remedy of preclusion call into question the basic principle that a plaintiff must establish its case in the first instance before it is entitled to a judgment, regardless of whether the defendant is permitted to controvert that prima facie case (*see Fair Price Med. Supply Corp. v Travelers Indem. Co.*, 10 NY3d 556 [2008]; *Hospital for Joint Diseases v Travelers Prop. Cas. Ins. Co.*, 9 NY3d 312 [2007]; *Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co.*, 90 NY2d 274 [1997]).

This principle is illustrated by reference to similar instances in which a defendant may be prohibited from contesting a plaintiff's position. For instance, where a court undertakes the drastic remedy of striking a defendant's answer, a plaintiff is not automatically entitled to recover the damages alleged in the complaint (*see Reynolds Sec. v Underwriters Bank & Trust Co.*, 44 NY2d 568, 572 [1978]; *Levi v Oberlander*, 144 AD2d 546, 547 [1988]; *see also* 6-3126 Weinstein-Korn-Miller, NY Civ Prac CPLR ¶ 3126.12). Rather, a plaintiff must still "submit the requisite proof of the facts constituting the claim by affidavit or complaint verified by a person with knowledge of those facts" (*Levi v Oberlander*, 144 AD2d 546, 547 [1988]; *see Reynolds Sec. v Underwriters Bank & Trust Co.*, 44 NY2d at 572).

Similarly, where a defendant has defaulted in appearing or answering a complaint, default judgments are not "rubberstamped once jurisdiction and a failure to appear have been shown" (*Joosten v Gale*, 129 AD2d 531, 535 [1987]). Rather, "[s]ome proof of liability is also required to satisfy the court as to the prima facie validity of the uncontested cause of action" (*id.*; *see* CPLR 3215 [f]; *Dupps v Betancourt*, 99 AD3d 855, 855 [2012]; *Atlantic Cas. Ins. Co. v RJNJ Servs., Inc.*, 89 AD3d 649, 651 [2011]; *see also* Siegel, NY Prac § 295 at 496-498 [5th ed 2011]). As such, notwithstanding the fact that "defaulters are deemed to have admitted all factual allegations contained in the complaint and all reasonable inferences that flow from them," a plaintiff must nevertheless establish "enough facts to enable a

court to determine that a viable cause of action exists" (*Woodson v Mendon Leasing Corp.*, 100 NY2d 62, 71 [2003]). In order to sustain this burden, a plaintiff must submit evidence from one "with personal knowledge of the relevant facts constituting the claim" (*HSBC Bank USA, N.A. v Betts*, 67 AD3d 735, 736 [2009]; *see Triangle Props. # 2, LLC v Narang*, 73 AD3d 1030, 1032 [2010]; *Colonial Country Club v Village of Ellenville*, 89 AD2d 935 [1982]).

So too, in the context of a claim for no-fault benefits, a plaintiff must establish, through competent proof, its claim for reimbursement of economic loss, regardless of whether a defendant is precluded from interposing a defense to the claim (*see* Insurance Law § 5102 [a] [1]; [b]). This requirement is neither drastic nor oppressive. It simply reflects the affirmative burden of proof imposed upon all plaintiffs to prove their case.

Since a plaintiff must make a substantive showing to establish its entitlement to a money judgment in the amount alleged in the complaint, the plaintiff's contentions that it need only establish that the insurer received notice of its proof of claim, and that the Attending Physician Verifications need not be competent to establish the truth of the matter asserted therein, are without merit. This conclusion is supported by the cases decided by this Court that have previously addressed this issue (*see Matter of Carothers v GEICO Indem. Co.*, 79 AD3d at 864-865; *Art of Healing Medicine, P.C. v Travelers Home & Mar. Ins. Co.*, 55 AD3d 644 [2008]; *see also* Gewuerz and Lebovits, *No Fault, No Foul: Litigating First-Party-Benefit Cases—Part II*, 66 Brooklyn Barrister [No. 2] 3, 8 [Oct. 2013]).

In *Matter of Carothers v GEICO Indem. Co.* (79 AD3d 864 [2010]), this Court affirmed an order of the Appellate Term of the Supreme Court for the Second, Eleventh, and Thirteenth Judicial Districts, which reversed a judgment of the Civil Court awarding the plaintiff $4,463.17 (24 Misc 3d 19 [2009]). This Court concluded that the plaintiff failed to establish its prima facie entitlement to an award in that amount since the plaintiff's failure to lay the proper foundation rendered the claim forms inadmissible to prove that the plaintiff sustained economic loss in that amount (79 AD3d 864 [2010]).

Similarly, in *Art of Healing Medicine, P.C.* (55 AD3d 644 [2008]), this Court concluded that the plaintiffs failed to establish their prima facie entitlement to judgment as a matter of law since the billing records were not admissible to prove the fact and amount of the claimed economic loss. The plaintiffs'

motion for summary judgment was properly denied "regardless of the sufficiency of the opposing papers" (*id*. at 644).

These cases illustrate that, in order to establish, prima facie, entitlement to a judgment as a matter of law in the amount specified in the complaint, a plaintiff seeking to recover first-party no-fault benefits must affirmatively demonstrate that it is entitled to reimbursement for necessary medical expenses arising from personal injuries sustained from the use or operation of a motor vehicle in the amount specified in the complaint (*see* Insurance Law § 5102 [a] [1]; [b]). This burden may be satisfied by submitting, in admissible form, a properly completed proof of claim form sufficient to bring the claim within the dictates of Insurance Law § 5102 (a) (1) and (b).

The prima facie showing necessary to demonstrate entitlement to a particular money judgment through submission of substantive proof of the economic loss must be distinguished from the prima facie showing necessary to demonstrate that the remedy of preclusion is warranted. In this regard, a plaintiff may establish, prima facie, that it is entitled to the remedy of preclusion by establishing that a proof of claim form was mailed to and received by the relevant insurance carrier, and that payment of no-fault benefits was overdue (*see Hospital for Joint Diseases v Travelers Prop. Cas. Ins. Co.*, 9 NY3d at 317; *Westchester Med. Ctr. v Progressive Cas. Ins. Co.*, 89 AD3d 1081, 1082 [2011]). Since a plaintiff may demonstrate that it is entitled to the remedy of preclusion merely by showing that the insurer had notice of its submitted proof of claim, the proof of claim forms submitted for this purpose need not be admissible for the truth of the matter asserted therein (*see Splawn v Lextaj Corp.*, 197 AD2d at 480; *compare Westchester Med. Ctr. v Progressive Cas. Ins. Co.*, 89 AD3d at 1082).

It must be acknowledged that this Court's determinations in *Matter of Carothers v GEICO Indem. Co.* (79 AD3d 864 [2010]) and *Art of Healing Medicine, P.C.* (55 AD3d 644 [2008]) are contrary to the position advanced by the plaintiff and accepted by the majority. The majority now overrules those precedents. The majority relies upon a line of cases which, in its view, indicates that a prima facie showing of entitlement to judgment as a matter of law in the amount specified in the complaint may be established by showing that the insurer had notice of the proof of claim forms and that the payment of no-fault benefits was overdue (*see Westchester Med. Ctr. v Progressive Cas. Ins. Co.*, 89 AD3d at 1082; *Westchester Med. Ctr. v GMAC Ins. Co. On-*

*line, Inc.*, 80 AD3d 603, 604 [2011]; *New York & Presbyt. Hosp. v Countrywide Ins. Co.*, 44 AD3d 729, 730 [2007]; *New York & Presbyt. Hosp. v Allstate Ins. Co.*, 29 AD3d 547, 547 [2006]).

However, these cases merely reflect the standard under which a plaintiff may establish, prima facie, that it is entitled to the remedy of preclusion. They do not represent the ultimate burden of proof which must be satisfied before a plaintiff may recover the economic loss alleged in the complaint, as that standard is governed by statute (*see* Insurance Law § 5102 [a] [1]; [b]). In any event, to the extent that this line of cases is in conflict with *Matter of Carothers v GEICO Indem. Co.* (79 AD3d 864 [2010]) and *Art of Healing Medicine, P.C.* (55 AD3d 644 [2008]), the latter cases, which are consistent with the basic legal principle that a plaintiff must establish its substantive case in the first instance through evidence in admissible form, represent the better approach and should be retained.

Any suggestion that my analysis would require a claimant to prove the merits of its claim prior to triggering the 30-day period pursuant to Insurance Law § 5106 (a) misapprehends my position. As I have previously indicated, an insurer's failure to timely controvert the "proof of the fact and amount of the loss sustained" submitted by a claimant pursuant to Insurance Law § 5106 (a) may preclude an insurer from controverting the merits of a claim in subsequent litigation. However, the penalty of preclusion does not eliminate the plaintiff's ultimate burden of proof as established by Insurance Law § 5102 (a) (1) and (b). The proof of claim referred to in Insurance Law § 5106 (a) which triggers an insurer's duty to respond must not be confused with the plaintiff's ultimate burden which must be satisfied before it is entitled to a money judgment, as that burden is imposed by Insurance Law § 5102 (a) (1) and (b).

The majority and I are in agreement as to the manner in which a plaintiff may establish that preclusion is warranted as provided under this Court's case law (*see e.g. Westchester Med. Ctr. v Progressive Cas. Ins. Co.*, 89 AD3d at 1082). We disagree as to the effect of this remedy. I cannot agree that the remedy goes beyond precluding an insurer from controverting a plaintiff's prima facie case so that a plaintiff may automatically recover on the basis of nothing more than mere allegation. Such automatic recovery leaves an insurer in a position that is actually *worse* than that of a party that has defaulted. In my view, the penalty of preclusion operates here to preclude an insurer from putting on a case, and, consequentially, from opposing a

summary judgment motion. Such a penalty is still a "drastic" one (*Zakhidov v Boulevard Tenants Corp.*, 96 AD3d 737, 739 [2012]), and is sufficient to protect the policy interest of promoting " 'a tightly timed process of claim, disputation and payment' " (*Hospital for Joint Diseases v Travelers Prop. Cas. Ins. Co.*, 9 NY3d at 319, quoting *Presbyterian Hosp. in City of N.Y. v Maryland Cas.* Co., 90 NY2d 274, 281 [1997]), without frustrating the other core objectives of the statute, "to reduce the burden on the courts and to provide substantial premium savings to New York motorists" (*Matter of Medical Socy. of State of N.Y. v Serio*, 100 NY2d 854, 860 [2003]), by inviting even more fraud.

Here, as previously noted, the plaintiff's submissions are not competent to establish the facts asserted by the third-party billing company in the Attending Physician Verifications (i.e., they are not competent to establish that the procedures and services documented therein were actually rendered, causally related to the accident, and medically necessary). Since the plaintiff's submissions are only adequate to establish that the insurer had notice of the plaintiff's claim, they are only competent to establish that the plaintiff is entitled to the remedy of preclusion (*see Westchester Med. Ctr. v Progressive Cas. Ins. Co.*, 89 AD3d at 1082; *Westchester Med. Ctr. v GMAC Ins. Co. Online, Inc.*, 80 AD3d at 604; *New York & Presbyt. Hosp. v Countrywide Ins. Co.*, 44 AD3d at 730; *New York & Presbyt. Hosp. v Allstate Ins. Co.*, 29 AD3d at 547).

Since the plaintiff failed to affirmatively set forth its proof of claim through the submission of evidence in admissible form demonstrating that the insured suffered economic loss in the amount of $6,130.70 (*see Matter of Carothers v GEICO Indem. Co.*, 79 AD3d at 864-865; *Art of Healing Medicine, P.C. v Travelers Home & Mar. Ins.* Co., 55 AD3d 644 [2008]), that branch of its motion which was for judgment as a matter of law in the amount of $6,130.70 was properly denied, regardless of the sufficiency, or the existence, of the defendant's opposition thereto (*see Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851 [1985]; *accord Woodson v Mendon Leasing Corp.*, 100 NY2d 62, 71 [2003]; *Reynolds Sec. v Underwriters Bank & Trust Co.*, 44 NY2d 568, 572 [1978]).

Given the devastating financial effect that no-fault fraud has had on New York drivers and its impact on legitimate claims, it is all the more imperative that potential claimants comply with the basic principles surrounding the burden of proof imposed

upon all plaintiffs. An abrogation of this requirement invites claims for services that were neither medically necessary nor actually performed. The majority's expansion of the preclusion remedy so as to reduce a plaintiff's prima facie burden in abrogation of Insurance Law § 5102 (a) (1) and (b), while motivated by the laudable policy objective of speeding resolution of claims, overlooks the more fundamental policy objectives embodied in the burden of production required of all who seek a judgment from a court. In any event, the drastic expansion of a court-made rule that is in conflict with the basic precepts of burden-shifting and the underlying statutory scheme will do little to speed the resolution of claims, as it will simply embolden the fraudulent billers that already have clogged the system and increase the difficulty in identifying and separating legitimate claims from fraudulent ones. Under such a framework, if fraud is actually discovered, the billing services companies and medical providers will be in position to point their fingers at one another, each claiming to have no knowledge of the allegedly fraudulent acts of the other (*see e.g. Matter of Tsirelman v Daines*, 61 AD3d 1128 [2009]). There is no reason to abide such a result, particularly where it is at odds with our legal system's most basic principle that a party seeking legal redress must affirmatively prove its case in court before that court will exercise its authority to award judgment.

Ordered that the order dated February 1, 2011, is modified, on the law, by deleting the provision thereof affirming the order dated March 6, 2009, and substituting therefor a provision modifying the order dated March 6, 2009, by deleting the provision thereof denying that branch of the plaintiff's motion which was for summary judgment on the complaint, and substituting therefor a provision granting that branch of the motion, except as to the claim dated November 17, 2004, in the amount of $139; as so modified, the order dated February 1, 2011, is affirmed, with costs to the plaintiff, and the matter is remitted to the Civil Court, Kings County, to calculate the amount owed to the plaintiff for no-fault benefits, and to determine whether the plaintiff is entitled to statutory interest and attorney's fees (*see* Insurance Law § 5106 [a]; 11 NYCRR 65-4.6).

ANGIOLILLO and DICKERSON, JJ., concur with RIVERA, J.P; MILLER, J., dissents in a separate opinion in which HALL, J., concurs.