OPINION OF THE COURT
Memorandum.
Ordered that the order is affirmed, without costs.
In this action by a provider to recover assigned first-party no-fault benefits, the Civil Court denied plaintiffs motion for summary judgment, finding that plaintiff had failed to establish its prima facie entitlement to that relief. We agree.
A no-fault provider establishes its prima facie entitlement to summary judgment by proof of the submission to the defendant of a statutory claim form, setting forth the fact and the amount of the loss sustained, and that the defendant had failed to either pay or deny the claim within the requisite 30-day period (see Insurance Law § 5106 [a]; New York & Presbyt. Hosp. v Allstate Ins. Co., 31 AD3d 512 [2006]; Mary Immaculate Hosp. v Allstate Ins. Co., 5 AD3d 742 [2004]; see also Westchester Med. Ctr. v Nationwide Mut. Ins. Co., 78 AD3d 1168 [2010]). In order for the claim forms to constitute prima facie proof of the fact and the amount of the loss sustained, the affidavit submitted by the plaintiff in support of its motion for summary judgment must lay a sufficient foundation to establish that the claim forms annexed thereto are admissible under the business records exception to the hearsay rule, which allows a document to be used as proof of the “act, transaction, occurrence or event” recorded in the document (CPLR 4518 [a]; see Art of Healing Medicine, P.C. v Travelers Home & Mar. Ins. Co., 55 AD3d 644 [2008]; Dan *23 Med., P.C. v New York Cent. Mut. Fire Ins. Co., 14 Misc 3d 44 [App Term, 2d & 11th Jud Dists 2006]).
In the case at bar, plaintiff sought to lay the requisite foundation for the admission of its claim forms by submitting an affidavit executed by the owner of its third-party billing company, who alleged that plaintiff had provided its medical records to his billing company, that his company had used those records to create the claim forms at issue and that his company had then mailed those claim forms to defendant. The affiant further asserted that, pursuant to the business relationship existing between his company and his no-fault provider clients, those clients have a business duty to provide the medical records. He alleged, moreover, that the medical records his company relies on are “created near the time in which the events therein described occurred; they are created in the course of the providers’ business; and it is the providers’ business to create these documents as evidence of the services they have rendered.”
In Matter of Carothers v GEICO Indem. Co. (79 AD3d 864 [2d Dept 2010]), where a third-party billing company merely printed no-fault claim forms, which had been created by the healthcare provider, and mailed them to the insurance company, the Appellate Division held that the testimony of an employee of the billing company failed to provide the requisite foundation to demonstrate that the claim forms should be considered under the business records exception to the hearsay rule, since the billing company did not create the records and there was no showing that its employee was familiar with the plaintiff’s record-keeping procedures. In this case, unlike in Matter of Carothers (id.), the billing company demonstrated that it had actually created the claim forms at issue. However, the analysis cannot end there because here the billing company used the information contained in the medical records furnished by plaintiff to create the claim forms. As noted by the Court of Appeals, in order for a document, such as the claim forms that are the subject of this lawsuit, to be considered for the truth of the assertions contained therein, “each participant in the chain producing the record, from the initial declarant to the final entrant, must be acting within the course of regular business conduct or the declaration must meet the test of some other hearsay exception” (Matter of Leon RR, 48 NY2d 117, 122 [1979]).
In the case at bar, plaintiff sought to demonstrate, through an affidavit of the owner of its billing company, that its medical records met the test of the business records exception to the *24 hearsay rule in two different ways. First, the owner of its billing company claimed that plaintiffs medical records were made in a manner consistent with CPLR 4518 (a). However, his affidavit failed to demonstrate that he has personal knowledge of plaintiffs practices and procedures and that he is competent to testify about those practices and procedures (see CPLR 4518 [a]; Matter of Carothers v GEICO Indem. Co., 79 AD3d 864 [2010]; see also Reiss v Roadhouse Rest., 70 AD3d 1021, 1024-1025 [2010]).
Plaintiff also sought to demonstrate, through the affidavit, that plaintiffs medical records were incorporated into its billing company’s records and that its billing company relied upon the medical records in its regular course of business (see Matter of Carothers v GEICO Indem. Co., 79 AD3d 864 [2010]). In People v DiSalvo (284 AD2d 547 [2001]) and Plymouth Rock Fuel Corp. v Leucadia, Inc. (117 AD2d 727 [1986]), the Appellate Division allowed documents into evidence under the business records exception to the hearsay rule, even though the witness laying the foundation for their admission was a recipient of the records and did not have personal knowledge of the maker’s practices and procedures, because there was a showing of meaningful incorporation and reliance. In each of those cases, an entity sought to admit a third party’s records into evidence, pursuant to the business records exception to the hearsay rule, through the testimony of the entity’s own employee. In the case at bar, however, it was plaintiff that sought to admit its own claim forms, pursuant to the business records exception to the hearsay rule, through the testimony of an employee of its third-party biller. Further, it appears that, in DiSalvo and Plymouth Rock Fuel Corp., the third party had a business duty to report accurate information to the entity seeking to use those records. In this case, although plaintiffs biller asserted that plaintiff had a contractual duty to provide accurate information to its billing company, plaintiff did not submit any evidence of such a duty (cf. Hochhauser v Electric Ins. Co., 46 AD3d 174 [2007]). Furthermore, in DiSalvo and Plymouth Rock Fuel Corp., the truthfulness of the documents was of paramount importance to the entities claiming to have incorporated them into their own records and to have relied upon them, because those entities relied upon the third party’s documents either to allocate waste-disposal costs or bill their clients for oil deliveries, respectively. Here, there has been no demonstration that the truthfulness or accuracy of plaintiffs medical records has any relevance to *25 whether its billing company is compensated for its services or that the information contained in plaintiffs medical records was otherwise of paramount importance to its billing company’s business.
As we find that plaintiff failed to make the necessary showing that its billing company incorporated plaintiffs medical records into its own and relied upon them (see Matter of Carothers v GEICO Indem. Co., 79 AD3d 864 [2010]), plaintiffs medical records do not meet the test of the business records exception to the hearsay rule. As a result, the claim forms created by plaintiffs biller from the medical records do not fall within the business records exception to the hearsay rule (see Matter of Leon RR, 48 NY2d 117 [1979]). Consequently, to the extent plaintiff relies on the claim forms to prove the fact and the amount of the loss sustained, plaintiff has failed to demonstrate that they are any more trustworthy than the claim forms in Matter of Carothers v GEICO Indem. Co. (79 AD3d 864 [2010]). We note that, simply because a document has not been shown to be admissible pursuant to the business records exception to the hearsay rule, so that it can be used as proof of the matter asserted therein, this does not mean that the document could not be admissible for another purpose (see Prince, Richardson on Evidence § 4-105 [Farrell 11th ed]).
Plaintiff further argues on appeal that the claim forms are inherently reliable. According to plaintiff, the trustworthiness of the subject claim forms can be established by the fact that plaintiffs owner’s signature appears on each form. Moreover, plaintiff argues that the claim forms are prescribed by regulation, and, if fraudulently submitted, carry a sanction, making them particularly reliable and trustworthy.
While the statutory NF-3 verification of treatment forms at issue herein contain a statement setting forth the consequences for anyone who “knowingly and with intent to defraud any insurance company” files a claim, the claim forms are not sworn to by one with personal knowledge. (Furthermore, when the owner of plaintiffs third-party billing company described in his affidavit the procedures his office uses for preparing and mailing claim forms, he did not assert that the claim forms are presented to Dr. Etienne for her signature. This incidentally raises questions about how the instant claim forms ever came to be signed in the first instance.) Finally, the fact that the claim forms are prescribed by regulation does not render them inherently trustworthy or reliable. As recognized by the Court of Ap *26 peals, incidents of no-fault fraud are prevalent in New York, including instances where corrupt medical clinics “generate stacks of medical bills for each passenger, detailing treatments and tests that were unnecessary or never performed” (see Matter of Medical Socy. of State of N.Y. v Serio, 100 NY2d 854, 861 [2003]).
Since the Civil Court properly determined that plaintiff failed to demonstrate its prima facie entitlement to summary judgment, the order is affirmed.
Pesce, EJ., Weston and Rios, JJ., concur.