This opinion is uncorrected and subject to revision before publication in the New York Reports.
--------------------------------------------------------------------

No. 75
Viviane Etienne Medical Care,
P.C., as assignee of Alem
Cardenas,
             Respondent,
        v.
Country-Wide Ins. Co.,
             Appellant.


                Thomas A. Torto, for appellant.
                David M. Gottlieb, for respondent.
                American Transit et al., amici curiae.


ABDUS-SALAAM, J.:

        This appeal requires us to determine what proof a

plaintiff medical provider must advance to make a prima facie

showing of entitlement to summary judgment in a no-fault

insurance action.  We hold that a plaintiff demonstrates prima

- 1 -

facie entitlement to summary judgment by submitting evidence that payment of no-fault benefits are overdue, and proof of its claim, using the statutory billing form, was mailed to and received by the defendant insurer.  Proof evincing the mailing must be presented in admissible form, including where it is applicable, meeting the business records exception to the hearsay rule. Applying this rule to the facts of this case, plaintiff demonstrated entitlement to summary judgment.  Therefore, the order of the Appellate Division should be affirmed, insofar as appealed from, and the certified question answered in the affirmative.

I.

Following an automobile accident in June 2004, Alem Cardenas received treatment for his injuries at the office of plaintiff Viviane Etienne Medical Care, P.C.  Cardenas's automobile liability insurance policy with defendant Country-Wide Insurance Company contained a New York State no-fault endorsement.  Cardenas assigned his right to receive no-fault benefits to plaintiff.  To receive reimbursement for the services it rendered to Cardenas, plaintiff submitted to defendant eight verification of treatment forms[1] demonstrating the services rendered or equipment provided, and the corresponding cost.  Each

---

[1]  The forms used by the plaintiff are a standard form distributed by the New York State Department of Financial Services.

form was signature stamped with "V Etienne MD."  Within 15 days from receipt of the verification of treatment form, an insurer may seek further verification (see 11 NYCRR 65-3.5 [b]) and within 30 days after receiving the verification of treatment form, the insurer must pay or deny the claim (see Insurance Law § 5106 [a]; 11 NYCRR 65-3.8 [c]).  Defendant denied payment on one claim in the amount of $139 dated November 17, 2004.  Defendant did not respond to any of the other claims.

Plaintiff commenced this action seeking to recover no-fault insurance benefits, asserting that it timely submitted bills and claims for payment to defendant in the amount of $6,130.70,[2] but defendant had yet to make any payments, deny the requests, or ask for verification of the claims.  Plaintiff also requested interest and attorney's fees under the Insurance Law.  Defendant answered and asserted as an affirmative defense that payment for plaintiff's claims was not overdue because plaintiff failed to submit "proper proof of the fact and amount of the loss" as required by the Insurance Law.

Plaintiff moved for summary judgment on its claims, arguing that it had met its prima facie burden of showing the fact and amount of loss sustained, and that the payment of the benefits was overdue.  As support, plaintiff submitted the

---

[2]  Due to an error in calculation, the reimbursement amount sought in plaintiff's complaint was wrong.  The actual total amount billed to the insurer was $6,566.46.  Plaintiff moved to amend its complaint to reflect the actual amount of damages.

aforementioned eight verification of treatment forms as proof of claim, along with seven mailing ledgers stamped by the United States Postal Service indicating the date the forms were mailed, and the denial of claim form.  Additionally, plaintiff submitted the affidavit of Roman Matatov, President of SUM Billing Corp. (SUM Billing), a third-party billing company hired by plaintiff.

In the affidavit, Matatov explained the company's billing procedures.  The medical providers must submit an assignment of benefits form signed by the injured party along with the injured party's identification prior to SUM Billing sending out the verification of treatment forms to the insurance companies for reimbursement.  Matatov personally obtains the insurance cards and police reports pertaining to the accident. He incorporates all the above documents into SUM Billing's records and relies upon them in the performance of his business. In generating the verification of treatment forms, Matatov requires the medical providers to submit to SUM Billing all information necessary to complete the forms and sees that any missing information is obtained from the providers.  Matatov then enters all the information to be included in the verification of treatment form into a custom-designed software system that creates the completed forms.  Matatov averred that after the forms are created, he logs the bills into a mailing ledger, and personally mails the bills to the insurance company.  The mailing ledger is stamped by the United States Postal Service.  Matatov

stated that he "retain[s] sole responsibility for the mailing of the documents created by [SUM Billing], and [he] personally inspect[s] and verif[ies] the accuracy and completeness of every envelope set to leave the office."  The affidavit also described the eight proof of claim forms that plaintiff submitted with its motion for summary judgment.  Matatov affirmed that consistent with the described procedures, he mailed the eight proof of claim forms to defendant.

Defendant opposed the motion, arguing that plaintiff failed to meet its prima facie burden as it did not put forth evidence in admissible form, because all of plaintiff's exhibits were hearsay with no applicable exception.  It asserted that Matatov's affidavit did not provide sufficient foundation for the admission of the hearsay under the business records exception because the affidavit "merely state[d] the bills were mailed" but gave no other details required to meet the business records exception under CPLR 4518 (a).

Civil Court denied plaintiff's motion for summary judgment "for failure to establish a prima facie case."  The Appellate Term, for the Second, Eleventh and Thirteenth Districts, affirmed (31 Misc 3d 21 [2011]).  Relying on the Second Department's decision in Art of Healing Medicine, P.C. v Travelers Home & Mar. Ins. Co. (55 AD3d 644 [2d Dept 2008]), the Appellate Term held that Matatov's affidavit failed to lay a sufficient foundation for the business records hearsay exception.

Specifically, the court stated that the "affidavit failed to demonstrate that [Matatov] ha[d] personal knowledge of plaintiff's practices and procedures and that he [was] competent to testify about those practices and procedures" and alternatively failed to demonstrate that SUM Billing "incorporated plaintiff's medical records into its own and relied upon them" (31 Misc 3d at 24, 25).

Insofar as relevant here, the Appellate Division, with two justices dissenting, granted plaintiff's motion for summary judgment with respect to all the claims that were not timely denied by the insurer (114 AD3d 33).[3] The court declined to follow its decision in Art of Healing Medicine, P.C. v Travelers Home & Mar. Ins. Co. (55 AD3d 644 [2d Dept 2008]), wherein it held that the plaintiffs there "failed to establish their prima facie entitlement to judgment as a matter of law" because "[t]he plaintiffs' medical service providers failed to demonstrate the admissibility of their billing records under the business records exception to the hearsay rule" (id. at 664). The court concluded that "Art of Healing constitutes an anomaly, a jurisprudential drift from [the court's] well-established precedent"(114 AD3d at

_____

[3] All of the courts below denied plaintiff's motion for summary judgment on one of its claims dated November 17, 2004, in the amount of $139, as it was timely denied by the insurer. That propriety of that determination is not before this Court as plaintiff did not cross-appeal its denial.

44, 45).[4]

The court stated:

"We reaffirm the longstanding precedent that,
in this context, the plaintiff makes a prima
facie showing of entitlement to judgment as a
matter of law by submitting evidence, in
admissible form, that the prescribed
statutory billing forms were mailed to and
received by the defendant insurer, which
failed to either pay or deny the claim within
the prescribed 30-day period"

(114 AD3d at 35).  Applying that standard, the Appellate Division
determined that, with the exception of the claim that was denied,
plaintiff established prima facie entitlement to summary judgment
as a matter of law "by demonstrating that its prescribed
statutory billing forms used to establish proof of claim were
mailed to and received by the defendant and that . . . defendant
failed to either timely pay or deny the claims" (id. at 46).  The
court determined that defendant in opposition failed to raise a
triable issue of fact because it was precluded from raising the
defense that the proof of claim forms were inadmissible under the
business records exception to hearsay as it did not deny the
claim within the statutory time frame (id. at 47).[5]

The Appellate Division remitted the case to Civil Court

---

[4]  The court noted that it had relied upon Art of Healing in
the context of no-fault insurance in only one case, Matter of
Carothers (79 AD3d 864, 864-865 [2d Dept 2010]).

[5]  The dissenting justices concurred in part and dissented
in part, voting to affirm the order of Appellate Term and uphold
the decision in Art of Healing.

to determine whether plaintiff was entitled to statutory interest and attorney's fees.  Thereafter, the court granted defendant's motion for leave to appeal to this Court, certifying the question of whether its determination was properly made.


                              II.

          The Comprehensive Motor Vehicle Insurance Reparations Act, commonly referred to as the "No-Fault Law" (see Insurance Law article 51) is aimed at ensuring "prompt compensation for losses incurred by accident victims without regard to fault or negligence, to reduce the burden on the courts and to provide substantial premium savings to New York motorists" (Matter of Medical Socy. of State of NY v Serio, 100 NY2d 854, 860 [2003], citing Governor's Mem approving L. 1973, ch. 13, 1973 McKinney's Session Laws of N.Y. at 2335).  This Court has recognized the complicated nature of the statutory and regulatory scheme of the no-fault law (Presbyterian Hosp. in City of NY v Maryland Cas. Co., 90 NY2d 274, 286 [1997] [describing the scheme as a "'Rube-Goldberg-like maze'"]).  In Fair Price Med. Supply Corp. v. Travelers Indem. Co., we described the no-fault regime as follows:

> "'The[ ] regulations require an accident
> victim to submit a notice of claim to the
> insurer as soon as practicable and no later
> than 30 days after an accident (see 11 NYCRR
> 65-1.1, 65-2.4 [b]).  Next, the injured party
> or the assignee . . . must submit proof of
> claim for medical treatment no later than 45
> days after services are rendered (see 11

NYCRR 65-1.1, 65-2.4 [c]).  Upon receipt of one or more of the prescribed verification forms used to establish proof of claim, . . . an insurer has 15 business days within which to request "any additional verification required by the insurer to establish proof of claim" (11 NYCRR 65-3.5 [b]).  An insurer may also request "the original assignment or authorization to pay benefits form to establish proof of claim" within this time frame (11 NYCRR 65-3.11 [c]).  Significantly, an insurance company must pay or deny the claim within 30 calendar days after receipt of the proof of claim (see Insurance Law § 5106 [a]; 11 NYCRR 65-3.8 [c]).  If an insurer seeks additional verification, however, the 30-day window is tolled until it receives the relevant information requested (see 11 NYCRR 65-3.8 [a] [1])'"

(Fair Price Med. Supply Corp. v. Travelers Indem. Co., 10 NY3d 556, 562-563 [2008], quoting Hospital for Joint Diseases, 9 NY3d 321, 317 [2007]; see Insurance Law § 5106 [a]).[6]

Where an insurer fails to pay or deny a claim within the requisite 30 days under the statute and regulations following its receipt of the proof of claim, the insurer is subject to "substantial consequences," namely, preclusion "from asserting a defense against payment of the claim" (Fair Price, 10 NY3d at 563 [internal quotation marks omitted]).  The only exception to preclusion recognized by this Court arises where an insurer raises lack of coverage as a defense (see id.; Hospital

---

[6]  Plaintiff commenced this action in September 2005, prior to adoption of the April 1, 2013 amendments to the no-fault insurance regulations, including the additions to 11 NYCRR 65-3.5 and 11 NYCRR 65-3.8.  The amended regulations are not applicable to this case and, therefore, have no bearing on this decision.

for Joint Diseases v Travelers Prop. Cas. Ins. Co., 9 NY3d at 318; Central Gen. Hosp. v Chubb Group of Ins. Cos., 90 NY2d 195, 199 [1997]).  This Court has recognized that preclusion may require an insurer to pay a no-fault claim it might not have had to honor if it had timely denied the claim (see Presbyterian Hosp., 90 NY2d at 285).  Nonetheless, we emphasized that the great convenience of "prompt uncontested, first-party insurance benefits" is "part of the price paid to eliminate common-law contested lawsuits" (id.; see Fair Price, 10 NY3d at 565-566).

Prior to Art of Healing and following its abandonment, the Second Department has held that "[i]n an action to recover no-fault benefits, a plaintiff makes a prima facie showing of entitlement to judgment as a matter of law by submitting evidentiary proof that the prescribed statutory billing forms were mailed to and received by the relevant insurer, and that payment of no-fault benefits was overdue" (Westchester Med. Ctr. v. Progressive Cas. Ins. Co., 89 AD3d 1081, 1082 [2d Dept 2011]; see New York Hosp. Medical Center of Queens v QBE Ins. Corp., 114 AD3d 648, 648 [2d Dept 2014]).  Other Appellate Division Departments have adopted the Second Department's approach and articulated the same standard (see e.g. Sunshine Imaging Assn./WNY MRI v Government Empls. Ins. Co., 66 AD3d 1419, 1420 [4th Dept 2009]; Countrywide Ins. Co. v 563 Grand Med., P.C., 50 AD3d 313, 314 [1st Dept 2008]; LMK Psychological Servs., P.C. v Liberty Mut. Ins. Co., 30 AD3d 727, 728 [3d Dept 2006]).

We agree with the Appellate Division Departments that a summary judgment motion in a no-fault insurance case where the benefits are overdue, requires proof that the statutory claim forms were mailed to and received by the insurer.  The legislative design of the no-fault insurance scheme demonstrates an interest in prompt resolution of reimbursement claims, a desire to avoid litigation, and statutory consequences on an insurer to incentivize it to seek verification of a claim, deny it, or pay.  As this Court has stated:

> "No-fault reform was enacted to provide prompt uncontested, first-party insurance benefits.  That is part of the price paid to eliminate common-law contested lawsuits. . . . The tradeoff of the no-fault reform still allows carriers to contest ill-founded, illegitimate and fraudulent claims, but within a strict, short-leashed contestable period and process designed to avoid prejudice and red-tape dilatory practices"

(Presbyterian, 90 NY2d at 285 [citation omitted]; see Hospital for Joint Diseases, 9 NY3d at 320).  Consistent with these interests, a medical provider seeking reimbursement from a no-fault insurer demonstrates its entitlement to reimbursement of overdue benefits when it proves that it submitted a completed claim form to the insurer.  A claim is overdue if it is not denied or paid within 30 days of the insurer's receipt of proof of claim (see 11 NYCRR 65-3.8 [a] [1]; Insurance Law § 5106 [a]).  Thus, it follows that a claim is not overdue when it is timely denied by the insurer.

The requisite proof in a no-fault insurance case is

"proof of the fact and amount of the loss sustained" (Insurance Law § 5106 [a]).  To establish entitlement to summary judgment on overdue no-fault benefits, the medical provider is required to submit proof of mailing through evidence in admissible form. Such proof may include the verification of treatment form and/or an affidavit from a person or entity (1) with knowledge of the claim and how it was sent to the insurer or (2) who has relied upon the forms in the performance of their business.[7]  Thus, even where an insurer is precluded from raising a defense to the proof of claim form because of its failure to timely deny the claim, the plaintiff medical provider must, as an initial matter, demonstrate its entitlement to summary judgment by submission of proof in admissible form.

Admissible evidence may include "affidavits by persons having knowledge of the facts [and] reciting the material facts" (GTF Marketing v Colonial Aluminum Sales, 66 NY2d 965, 967 [1985]; CPLR 3212 [b]; see Zuckerman v City of New York, 49 NY2d 557, 562).  Certain affidavits and documents submitted in support of a motion for summary judgment may be deemed admissible where

_____

[7]  While many of the Appellate Division decisions determining that a medical provider had submitted sufficient proof of mailing and overdue reimbursement do not describe the actual documents submitted to support the motion for summary judgment (see e.g. Westchester Med. Ctr. v. Progressive Cas. Ins. Co., 89 AD3d 1081, 1082 [2d Dept 2011]; LMK Psychological Servs., P.C. v Liberty Mut. Ins. Co., 30 AD3d 727, 728 [3d Dept 2006]), it appears that verification of treatment forms and/or affidavits describing the mailing are the types of documents typically considered.

those documents meet the requirements of the business records

exception to the rule against hearsay under CPLR 4518 (see e.g.

JPMorgan Chase Bank, N.A. v Clancy, 117 AD3d 472, 472 [1st Dept

2014]; Education Plus, Inc. v Glasser, 112 AD3d 1125, 1125-1126

[3d Dept 2013]; Melendez v 176 Hopkins Associates, LP, 28 AD3d

723, 723 [2d Dept 2006]).  CPLR 4518 (a) provides:

> "Any writing or record, whether in the form
> of an entry in a book or otherwise, made as a
> memorandum or record of any act, transaction,
> occurrence or event, shall be admissible in
> evidence in proof of that act, transaction,
> occurrence or event, if the judge finds that
> it was made in the regular course of any
> business and that it was the regular course
> of such business to make it, at the time of
> the act, transaction, occurrence or event, or
> within a reasonable time thereafter."

IV.

Applying these principles to the instant facts, the

Appellate Division properly determined that plaintiff met its

prima facie summary judgment burden.  As relevant here, to

support its motion, plaintiff submitted the eight verification of

treatment forms and Matatov's affidavit.  The documents submitted

by plaintiff meet the business records exception to the hearsay

rule.

Matatov's affidavit states that based on his business

agreement with plaintiff, SUM Billing created the verification of

treatment forms in the regular course of its business and that

the forms were created soon after the services were provided by

plaintiff to Cardenas.  Indeed, the tight timetable of the no-

fault scheme requires prompt submission of proof of claim in order to receive reimbursement.  Matatov's affidavit outlines the office practices and procedures used by SUM Billing to mail claim forms to insurers and demonstrates that Matatov himself mails the forms.  Matatov explained that SUM Billing relies on these forms in the performance of its business.  Further, the affidavit states how and when the forms at issue here were created and that they were mailed to defendant within the statutory time frame. Thus, as plaintiff was able to demonstrate SUM Billing's office mailing practices and procedures, "a presumption arises that those notices have been received by the insure[rs]" (Nassau Ins. Co. v Murray, 46 NY2d 828, 829 [1978]).  It is undisputed that defendant did not pay or deny seven out of the eight claims at issue.  Consequently, those claims are overdue.  Plaintiff, therefore, satisfied its burden on summary judgment by demonstrating the mailing of the proof of claim forms, and their receipt by the insurer.

The Appellate Division also properly determined that defendant failed to raise a triable issue of fact in opposition. In fact, defendant concedes that it is precluded from raising any defense due to its failure to timely deny the claims.

Contrary to the dissent's contention, the risk of an insurer paying out fraudulent claims has been recognized by this Court (see Presbyterian Hosp., 90 NY2d at 285); however, as we have stated that risk is part of the price paid for swift,

uncontested resolution of no-fault claims. Where no-fault benefits are not overdue, because of timely denial, the insurer's compliance with the statute and regulations allows it to retain its right to contest the claims and prevent payment of fraudulent claims. An insurer providing no-fault benefits, may not simply sit on its hands until litigation is commenced. Some action is required.

Accordingly, the order of the Appellate Division, insofar as appealed from, should be affirmed, with costs, and the certified question answered in the affirmative.

Viviane Etienne Medical Care PC a/a/o Alem Cardenas v Country
Wide Ins. Co.

No. 75

STEIN, J.(dissenting):

The majority holds that a plaintiff medical provider in
a no-fault case establishes prima facie entitlement to summary
judgment by demonstrating that the insurer was billed and failed
to timely deny or pay the billed claim.  In my view, neither the
statutory and regulatory no-fault scheme, nor our cases
concerning the preclusion doctrine, obviate a plaintiff's burden
to demonstrate its prima facie entitlement to benefits sought, as
compared to only proof of billing and non-payment.  I, therefore,
respectfully dissent.

Pursuant to the statutory no-fault scheme, automobile
insurance policies must provide for the payment of first party
benefits to certain persons "for loss arising out of the use or
operation in this state of [a] motor vehicle" (Insurance Law §
5103 [a] [1]; see 11 NYCRR 65-1.1).  Stated simply, first party
benefits are capped "payments to reimburse a person for basic
economic loss on account of personal injury arising out of the
use or operation of a motor vehicle" (Insurance Law § 5102 [a];
see Insurance Law § 5102 [b]).  Covered expenses include those
incurred for "necessary" medical services (Insurance Law § 5102
[a] [1]).  Thus, to establish entitlement to no-fault benefits

- 1 -

for medical services, a party must demonstrate that the loss arose from an automobile accident and that the expenses incurred were medically necessary.

Under the detailed no-fault regulations implementing the Insurance Law, a claimant must submit a notice of claim to the insurer as soon as reasonably practicable, but no later than 30 days after the accident (see 11 NYCRR 65-1.1, 65-2.4 [b]; Fair Price Med. Supply Corp. v Travelers Indem. Co., 10 NY3d 556, 562-563 [2008]).  If the claimant receives medical services, the claimant -- or his or her assignee -- must submit written proof of claim for that treatment to the insurer within 45 days of the provision of services (see 11 NYCRR 65-1.1, 65-2.4 [c]).  This proof of claim must include "full particulars of the nature and extent of the injuries and treatment received and contemplated" (11 NYCRR 65-1.1).  Upon receipt of a prescribed verification form, the insurer has 15 days to request "any additional verification required . . . to establish proof of claim" (11 NYCRR 65-3.5 [b]; Fair Price, 10 NY3d at 563).

As particularly relevant here, an insurer must pay or deny a claim, in whole or in part, within 30 calendar days of receipt of the proof of claim or any additional verification requested (see Insurance Law § 5106 [a]; 11 NYCRR 65-3.8 [a] [1]; [c]; Hospital for Joint Diseases v Travelers Prop. Cas. Ins. Co., 9 NY3d 312, 317 [2007]).  The majority accurately states that a failure to do so carries "substantial consequences" (Hospital for

Joint Diseases, 9 NY3d at 317).  Namely, pursuant to Insurance

Law § 5106 (a), a failure to pay or deny benefits within 30 days

of receipt of "proof of the fact and amount of loss sustained"

renders benefits "overdue," and all overdue payments bear

interest at a rate of 2% per month (see 11 NYCRR 65-3.8 [a] [1];

Hospital for Joint Diseases, 9 NY3d at 317-318).  Further, a

claimant is entitled to recover attorney's fees for overdue

payments (see Insurance Law § 5106 [a]).  In addition to the

statutory penalties, we have held that a failure to timely pay or

deny a claim will result in an insurer being precluded from

interposing a defense against payment of the claim, except where

the defense raised is lack of coverage (see Fair Price, 10 NY3d

at 563-565; Hospital for Joint Diseases, 9 NY3d at 318-319;

Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co., 90 NY2d

274, 283 [1997]).

Defendant Country-Wide Insurance Company readily

concedes that, assuming that plaintiff Viviane Etienne Medical

Care, P.C., has met its prima facie burden of showing entitlement

to payment of its claims, the statutory penalties are applicable

and defendant is precluded from raising a defense due to its

failure to timely pay or deny the claims.  The majority holds

that, because these penalties are applicable to plaintiff's

claims, plaintiff is entitled to judgment based on its showing of

proof of billing, receipt, and non-payment.  I, however, find no

basis to conclude that any of the aforementioned penalties that

may be imposed against defendant obviate plaintiff's burden to make a prima facie showing of entitlement to benefits -- i.e., that the loss arose from an automobile accident and that the expenses incurred were medically necessary -- a showing that defendant would then be precluded from challenging.

As indicated by the lack of a direct citation to any statutory authority for the majority's position, no language in the Insurance Law or the relevant regulations compels the conclusion that the Legislature intended to excuse a no-fault plaintiff from demonstrating entitlement to benefits as a penalty to the insurer. The Insurance Law does not provide that, because benefits are "overdue" and the insurer is therefore subject to certain enumerated repercussions, a plaintiff need not proffer admissible evidence establishing the basic elements of a no-fault claim. Rather, the rule now adopted by the majority -- that only proof of billing and the absence of timely denial or payment are required to obtain reimbursement -- was derived by the Appellate Division Departments from our cases creating and defining the preclusion rule (see e.g. Westchester Med. Ctr. v Progressive Cas. Ins. Co., 89 AD3d 1081, 1082 [2d Dept 2011], citing Presbyterian Hosp., 90 NY2d 274 [1997]; New York & Presbyt. Hosp. v Selective Ins. Co. of Am., 43 AD3d 1019, 1020 [2d Dept 2007], citing Presbyterian Hosp., 90 NY2d 274 [1997]). In my view, the extension of the preclusion doctrine established by the majority in this case is misguided because our preclusion cases did not

effectuate a change to a plaintiff's burden on summary judgment.

It is well established that "the proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact" (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]; see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]).  In other words, "'[t]o obtain summary judgment it is necessary that the movant establish [a] cause of action . . . 'sufficiently to warrant the court as a matter of law in directing judgment' in [the movant's] favor (CPLR 3212 subd [b]), and [the movant] must do so by tender of evidentiary proof in admissible form'" (Zuckerman v City of New York, 49 NY2d 557, 562 [1980], quoting Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065, 1067 [1979]; see Bush v St. Clare's Hosp., 82 NY2d 738, 739 [1993]).  "Failure to make such prima facie showing requires a denial of the motion, regardless of the sufficiency of the opposing papers" (Alvarez, 68 NY2d at 324).  Applying these uncontroverted principles here, the preclusion rule, which prevents an insurer from raising most defenses to a no-fault claim, comes into play only after the plaintiff's prima facie case has been demonstrated.  That is, the preclusion doctrine has no application to the facts before us because defendant seeks only to hold plaintiff to its initial summary judgment burden.

While proof of billing and the absence of timely denial

or payment may be required in order to invoke the preclusion rule, we have never held that such proof constitutes a prima facie showing of entitlement to judgment in a no-fault plaintiff's favor.  In fact, the State Insurance Department has interpreted the interplay between summary judgment and the preclusion rule in exactly the manner I propose, taking the view that, "[t]hough an insurer's defense to payment of claim may be precluded under the [preclusion] cases, . . . the claimant must still meet the statutory requisite and make out a prima facie case of entitlement to benefits," which requires that "reimbursable expenses must arise out of a motor vehicle accident and be medically necessary to treat the injuries" (Ops. Gen Counsel NY Ins Dept No. 00-01-02 [January 2000]).  Likewise, while we held that the insurer in Hospital for Joint Diseases was precluded from contesting the validity of a signature on an assignment form, we separately addressed the insurer's challenge insofar as it implicated the plaintiff's burden to demonstrate a prima facie case (see 9 NY3d at 319-320).  Unlike our approach in that case, the majority now conflates the preclusion rule with the summary judgment burden, effectively eviscerating our long-settled summary judgment principles in the no-fault context despite the absence of any such direction from the legislature.

The practical effect of the majority's holding today is that courts lack authority to verify that a no-fault plaintiff has established the basic facts supporting a claim prior to

awarding judgment, which is a result inconsistent with our summary judgment rules and, indeed, is not one endorsed even with respect to defaulting defendants (compare CPLR 3125 [f]). These rules are designed, at least in part, to prevent the perpetration of fraud upon the court. Moreover, an insurer's duty to pay or deny a claim within 30 days is not triggered until it receives "proof of the fact and amount of loss sustained" (Insurance Law § 5106 [a]; see 11 NYCRR 65-3.8 [a] [1]). Yet, the majority's rule arguably eviscerates any avenue for insurers to contest even whether a verification of treatment form contains sufficient information to constitute "proof of the fact and amount of loss sustained" -- or in other words, whether the payments were actually overdue -- since proof of the mailing of the prescribed form, without any regard to its contents or its completeness, will now carry a plaintiff's burden on summary judgment. In a system that we have recognized as already plagued by wide-spread abuse (see generally Pommells v Perez, 4 NY3d 566, 571 [2005]; Matter of Medical Socy. of State of N.Y. v Serio, 100 NY2d 854, 861 [2003]), the majority's rule unnecessarily increases the risk that insurers will be required to pay out fraudulent claims, which is detrimental, not only to the insurer, but also to claimants, whose entitlement to benefits (which is subject to a maximum amount) will consequently be reduced. This is a result that should not be countenanced by our judicial system, whose duty it is to fairly apply the law, and one which was not

intended by either the legislature or our preclusion cases.

It also bears noting that the rationale behind the preclusion doctrine, upon which the majority implicitly relies, does not support its application here. To be sure, a "core and essential objective" of the no-fault structure "is[] to provide a tightly timed process of claim, disputation and payment" (Presbyterian Hosp., 90 NY2d at 281), and the preclusion doctrine provides an incentive for insurers to comply with the regulatory time frame. However, where, as here, the objection is to the *evidentiary admissibility* of the NF-3 verification of treatment forms -- not to the accuracy or validity of their contents -- it would be impossible for the insurer to raise the objection before the plaintiff's summary judgment motion was brought, inasmuch as the insurer would have no way of knowing what evidentiary foundation would be offered.[1]

Significantly, requiring a plaintiff to establish its prima facie entitlement to benefits, rather than mere proof of billing, would not place on no-fault claimants an onerous burden that would impede the timely resolution of valid claims or

---

[1] To the extent the majority implies that an insurer should routinely issue timely denials of claims or verification requests in order to preserve its right to contest those claims, it seems to me, that this approach would directly conflict with the principles of fair practice set forth in the no-fault regulations. Such regulations provide that insurers should utilize fair claims processes and refrain from demanding verification "unless there are good reasons to do so" (11 NYCRR 65-3.2 [a], [c]).

increase no-fault litigation.  The statutory NF-3 verification of treatment form is a permissible proof of claim with respect to a non-hospital health care provider (see 11 NYCRR 65-3.11 [b]).  This form contains, among other things: necessary information regarding the provider, insurer, and the insured; a space for the "diagnosis and concurrent conditions"; boxes to check, indicating when the symptoms appeared and whether they are solely a result of an automobile accident; a space for a "report of services rendered"; and an assignment of benefits section [61-63].  As the Appellate Division dissenters aptly stated, plaintiff's prima facie case on the merits "would have been satisfied here if the plaintiff had simply submitted the proof of claim forms in admissible form" (114 AD3d at 49).

However, the affidavit proffered by plaintiff to support admission of the NF-3 forms -- which must be received for their truth to establish the "fact and amount of loss sustained" (Insurance Law § 5106 [a]), as should be required -- falls short.  Although the affidavit of Roman Matatov, the president of plaintiff's third-party billing service, stated that he had personal knowledge of the mailing of the NF-3 forms to defendant, he had no personal knowledge of plaintiff's record-keeping procedures or practices in creating the documents based on which he compiled those forms.  Thus, Matatov was unable to lay a sufficient foundation for the admissibility of the NF-3 forms under the business records exception to the hearsay rule (see

CPLR 4518 [a]; People v Brown, 13 NY3d 332, 341 [2009]; People v Cratsley, 86 NY2d 81, 90 [1995]; Matter of Leon RR, 48 NY2d 117, 122-123 [1979]), and inadmissible hearsay is insufficient to establish a prima facie case entitling plaintiff to summary judgment (see generally Zuckerman, 49 NY2d at 562).  I simply do not see why it would be unduly burdensome to require plaintiff to submit a proper affidavit, either from Matatov or a knowledgeable employee of the medical provider's practice.

In sum, in light of the absence of any explicit language in the no-fault statutes or regulations eliminating a plaintiff's burden to establish a prima facie case of entitlement to benefits or any indication of a legislative intent to eliminate such burden, and because the preclusion doctrine is not triggered until a prima facie showing has been made, I find no basis to diverge from our traditional rules pertaining to summary judgment motions.  Thus, I would conclude that proof of billing, receipt, and non-payment is simply insufficient to carry plaintiff's prima facie case here.  Rather, plaintiff should be obligated to proffer, in accordance with the basic rules of evidence, admissible NF-3 forms to demonstrate the merits of its claims, which defendant would then be precluded from contesting. Accordingly, I would reverse the Appellate Division order.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Order, insofar as appealed from, affirmed, with costs, and certified question answered in the affirmative. Opinion by Judge Abdus-Salaam. Chief Judge Lippman and Judges Pigott, Rivera and Fahey concur. Judge Stein dissents in an opinion in which Judge Read concurs.


Decided June 10, 2015